BRETT E. LEWIS (BL6812)
JUSTIN MERCER (JM1954)
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY  11201
Brett@iLawco.com
Justin@iLawco.com
Telephone:  (718) 243-9323

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALONCLICK, LLC,<br><br>                               Plaintiff,<br><br>vs.<br><br>SUPEREGO MANAGEMENT LLC and MINDY YANG,<br><br>                               Defendants. | Case No. 1:16-CV-02555-AT<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)** |

**I.    INTRODUCTION**

This is an uncomplicated case.  This dispute is about Chad Murawczyk's ("Murawczyk") scheme to exclude Mindy Yang ("Ms. Yang") from the business and brands that she helped to build and to prevent her from earning a living after her unfair ouster.  Ms. Yang was intimately involved in the creation of the MiN New York brand, boutique, fragrances, designs, packaging, copy, and more from the inception of the business line through January 2016, when Murawczyk wrongfully shut her out of the business. Ms. Yang was a partner and joint venturer with Murawczyk in the creation of the MiN New York brand and business over the course of roughly a decade.  Ms. Yang's name is as synonymous with the MiN New York brand as is Murawczyk's—precisely because they were partners.  However, unsuspectingly, Murawczyk

1

wrongfully shut Ms. Yang out of the business in a blatant attempt to freeze her out of her own company and to seize the business they built together for himself.  Ms. Yang brings this motion to dismiss a number of the spurious causes of action asserted against her and her business by Mr. Murawczyk in a bad faith attempt to bully her out of the business she helped create.

## II.	FACTUAL BACKGROUND

Murawczyk alleges that he founded plaintiff Salonclick in 1999. (Compl. ¶ 7, ECF No. 1-2 at 4).  According to the Complaint, plaintiff was originally a manufacturer of hair color, hair care and skin care products. (*Id*.). These items were sold to salons, spas and directly to the consumer. (*Id*.).  In time, Murawczyk began to rely upon Ms. Yang for assistance with the business. (*Id*. at ¶¶ 9-11, ECF No. 1-2 at 4-5).  Ms. Yang helped with graphic design, public relations, social media and relationships with manufacturers and customers. (*Id*.).  Ms. Yang helped grow Salonclick, which opened a boutique called, "MiN NY" in SoHo in 2008.  (*Id*. at ¶ 8, ECF No. 1-2 at 4).

On or about December 2015, Murawczyk decided that he no longer wanted to include Ms. Yang in the business. (Compl. ¶ 13, ECF No. 1-2 at 6).   Plaintiff filed a complaint in the Supreme Court of New York, County of New York on March 15, 2016 (the "State Court Action"). (*Id*. at 3-19).  Plaintiff also filed an application for a temporary restraining order against SuperEgo Management, LLC and Ms. Yang in state court (the "Temporary Restraining Order" or "TRO") on the same day. (ECF No. 1-3 at 48-66).  Hon. Geoffrey D. Wright granted the temporary restraining order on default on March 18, 2016.  (*Id*. at 73-74).  Murawczyk now has possession of all of the accounts listed above save for the New York Heart Facebook page. (*See* Ltr. Addressed to Judge Torres from E. Adinolfi, May 2, 2016, ECF No. 12).

Ms. Yang removed this matter to this Court on April 5, 2016 the grounds of federal

question jurisdiction. (ECF Doc No 1). Now Ms. Yang submits this motion to dismiss some of plaintiff's more outrageous causes of action in an effort to simply and focus this case on the heart of the matter: Murawczyk's underhanded efforts to deprive Ms. Yang of the fruits of her labor.[1]

### III. ARGUMENT

Plaintiff has alleged various claims against Defendants, however many are founded on the incorrect assumption that domain names and social media accounts are property rights. New York law is clear on this matter, especially with respect to domain names. Interests in domain names are contract interests, not property interests. The same should be said for social media accounts. Further, plaintiff fails to allege sufficient facts to give rise to a fiduciary duty— without which there can be no cause of action for a breach. Finally, plaintiff inappropriately alleges that Defendants violated New York General Business Law § 349—a section of law that is inapplicable in this case. As such, the first, second, seventh, eighth and ninth causes of action should be dismissed for failure to state a cause of action.

#### a. LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is warranted for failure to state a claim if there are not "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the nonmoving party. *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the Court need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *See Luce v. Edelstein*,

---

[1] In his May 2, 2016 letter to the Court, plaintiff expressed agreement to amend its Complaint to remove the seventh cause of action and all allegations relating to MiN NY's DropBox account. (ECF No. 12). As of the filing of this motion, plaintiff has not yet amended the Complaint.

802 F.2d 49, 54 (2d Cir. 1986).  To avoid dismissal under Rule 12(b)(6), a complaint must either contain direct or inferential allegations with respect to all material elements of the claim.

Where a complaint contains no more than "naked assertions devoid of further factual enhancement," or the allegations demonstrate only an, "unadorned, the defendant harmed me accusation," then it fails to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (*cititng Twombly*, 550 U.S. at 555).

b.  **PLAINTIFF'S COMPLAINT FAILS TO MEET THE GOVERNING STANDARD**

i.  **THE FIRST, SECOND AND EIGHTH CAUSES OF ACTION SHOULD BE DISMISSED AS THERE ARE NO PROPERTY RIGHTS AT ISSUE**

Plaintiff's first, second, and eighth causes of action allege that Defendants have either unlawfully possessed, interfered with the possession of, retained access of beyond authorization and/or denied Salonclick access to various social media accounts and domain names.  These arguments fail as a matter of law where plaintiff fails to allege a cognizable property or possessory interest in domain names or social media accounts, all of which are based on contract rights, not property.

First, it is settled law that domain names are not *property* under New York law. *See Wornow v. Register.com*, 8 A.D.3d 59, 777 N.Y.S.2d 25 (1st Dept 2004) (unanimously affirming holding that domain names are contract, not property, rights); *Zurakov v. Register.com*, 2001 WL 36241698 at *1 (Sup. Ct., New York Cty., July 25, 2001), *rev'd on other grounds*, 760 N.Y.S.2d 13 (1st Dept 2003) (domain name is a contract right, not property).  *Wornow* is a quite specific holding from a New York court on New York law: "[A] domain name that is not trademarked or patented is not personal property, but rather a contract right that cannot exist separate and apart from the services performed by a registrar…" *Wornow*, 8 A.D.3d at 60.  Thus, to the extent that

4

these counts assert that Defendants have in some way impacted the possessory right to any domain names (such as <InventoryofExperiences.com> and <NewYorkHeart.org>), they must be dismissed for failure to state a cause of action.

Further, a social media handle is arguably even more reliant for its existence on contract rights than is a domain name.  The social media user registers for an account, which is subject to the terms and conditions of the applicable site.  The user's handle simply designates the location of a user's Facebook page or Twitter feed on the site. In contrast, as stated above, social media handles are a function of contracts for services between the user and the social media company. Indeed, the social media Web sites at issue here – Facebook and Twitter – both make clear that the user's rights to a given handle are finite, limited in term, non-transferrable, revocable at will, and governed by contract.

Plaintiff can provide no decision or opinion in which either domain names or social media accounts are said to be property under New York law.  Cases in which expanding conversion has been considered – such as in *Ardis Health, LLC, et al. v. Nankivell*, 2011 WL 4965172 (S.D.N.Y. Oct. 19, 2011) and *Thyroff v. Nationwide Mut. Ins.*, 864 N.E.2d 1272 (N.Y. 2007) – are inapposite.  That the Court stated in *Ardis Health* that refusal to provide electronic access information to online accounts *could* support a claim of conversion under New York law is dicta.  *Thyroff* holds that computer records that were stored on a computer and were indistinguishable from printed documents can be subject to claim for conversion in New York — citing the example of an electronic copy of a manuscript of a novel stored online as being the same as a copy of the manuscript printed on paper.  However, none of the electronic data at issue in this case — not the domain names, nor the Twitter handle or Facebook page — is similarly reducible to or would be indistinguishable from printed documents.  Hence *Thyroff*, like *Ardis*

5

*Health*, has little bearing on the present case. Accordingly, the first, second and eighth counts should be dismissed as a matter of law.[2]

### ii. THE NINTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS INSUFFICIENTLY PLEADED THE EXISTENCE OF A FIDUCIARY RELATIONSHIP

The allegations underlying plaintiff's ninth cause of action are insufficient to state a cause of action. As such, this cause of action too must be dismissed.

Plaintiff pleads that Ms. Yang was merely an "independent contractor" spending "15 to 20 hours a week" doing tasks related to "graphic design, marketing, assistance with public events, and administrative support as needed;" someone who "often worked remotely," "was not required to work any set hours," not "required to physically be at MiN NY's office," with "no more role in the creation of [] scents than anyone else at MiN NY who would smell them and offer their opinions on the scent" and who was eventually replaced by another consultant. (Compl. ¶¶ 10-13, 16., ECF No. 1-2 at 4-6). Then, conflictingly, plaintiff alleges that "[a]s an independent contractor, Yang acted as MiN NY's agent, and as such owed MiN NY, the principal, fiduciary duties." (*Id*. at ¶ 76, ECF No. 1-2 at 17).

However, plaintiff's mere pleading of an oral "independent contactor" agreement between the parties fails to establish a fiduciary duty as it does its conclusory allegations of an agent-principal relationship between the parties (especially in light of the Complaint's previous and contradictory description of the Defendants' role in the business). If, as plaintiff asserts, Defendants only played a small role in plaintiff's business then there is little to support plaintiff's contradictory assertion that Ms. Yang owed plaintiff a fiduciary duty as an agent authorized to

---

[2] In addition, plaintiff is now in possession of all accounts at issue save for the New York Heart Facebook page. (*See* ECF No. 12 at 1). To the extent that Ms. Yang is not contesting control of these accounts and certain causes of action, such as Replevin, seek only injunctive relief, these claims are moot and should be dismissed.

represent the company.

Cases in which independent contractors have been found to be agents or to have a fiduciary duty frequently include prior written contracts or non-compete and confidentiality agreements. *See Barber v. Actknowledge, Inc.*, 2009 Slip Op 2009 (Sup. Ct., Kings Cty., June 30, 2009) (court could not determine terms of relationship between parties since alleged breaches of duty occurred subsequent to expiration of written contract) ("[the] applicability of agency principles in a given dispute depends on the terms of the agreement"); *Feiger v. Iral Jewelry, Ltd.*, 85 Misc. 2d 994 (Sup. Ct., New York Cty., 1975) (extending faithless agent rule principles to independent contractors in cases where the agreement between the principal and independent contractor established agent-principal relationship); *G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95 (2d Dept 2007) (evaluating a written consulting agreement to determine the duties of the agent and identity of the principal); *Compsolve, Inc. v. Neighbor*, 18 Misc. 3d 1104(A) (Sup. Ct. Erie Cty., 2007) (finding that an employee, not an independent contractor, breached its duty of loyalty by violating the written non-compete agreement signed by the parties). No such written agreement exists in the present case, much less one that spells out a duty to not compete or establishes a fiduciary duty.

"Under New York law, a fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over an other." *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995). The Complaint fails to allege sufficient facts to establish that either Defendant gained a "resulting superiority of influence" over plaintiff or "control and responsibility over" same. Instead, Plaintiff's allegations fail to establish the necessary trust and confidence to trigger the same

7

super-contractual fiduciary duties that we infer from attorney-client or doctor-patient relationships.  "A conventional business relationship, without more, is insufficient to create a fiduciary relationship." *Id.*, *citing Payrolls & Tabulating v. Sperry Rand Corp.*, 22 A.D.2d 595, 598 (1st Dept 1965); *see also Feigen v. Advance Capital Mgmt. Corp.*, 150 A.D.2d 281, 283 (1st Dept 1989).  Something more is required to allege a fiduciary duty absent express terms in a written contract between the parties – and this something more is sorely lacking in the pleadings.  As such, these claims should also be dismissed for failure to plead this count with requisite particularity.

### iii. PLAINTIFF'S SEVENTH CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION IF PLAINTIFF DOES NOT VOLUNTARILY DO SO IN AN AMENDED COMPLAINT

Plaintiff's seventh cause of action alleges that Defendants have engaged in deceptive practices.  The basis for this claim boils down to an alleged likelihood of confusion.  This type of injury does not fall within the ambit of this cause of action. *See Calvin Klein Trademark Trust v. Wachner*, 123 F.Supp.2d 731, 737 (S.D.N.Y. 2000) (Counts "that merely describe[] confusion of the kind that underlies a claim for trademark or trade dress infringement [are] precisely the kind of company-oriented injury that New York courts have held not to fall within the ambit").

The seventh cause of action is a claim for violation of N.Y. General Business Law § 349 (GBL). Section 349 is a consumer protection statute modeled on the Federal Trade Commission Act.  "A competitor's right of action under § 349, however, is limited.  Since trademark or trade dress infringement claims…fall outside the original intent of §§ 349 and 350…federal courts have determined that the provisions require the sort of offense to the public interest which would trigger FTC intervention under 15 U.S.C.A. § 45." *Horn's, Inc. v. Sanofi Beaute, Inc.*, 963 F. Supp. 318, 328 (S.D.N.Y. 1997) (granting summary judgment to defendant as to GBL § 349

claim and more). Plaintiff does not plead any threat to public injury or safety in the Complaint – certainly not one that would warrant FTC intervention. *See Luv N' Care, Ltd. v. Walgreen Co.*, 695 F.Supp.2d 125, 135 (S.D.N.Y. 2010) ("It is well settled, however, that infringement claims are not cognizable under [§ 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark dilution"); *Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F.Supp.2d 319, 327 (E.D.N.Y. 2003) ("It is well-established that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers for purposes of stating a claim under section 349"). As such, plaintiff's seventh cause of action, violation of GBL § 349, fails to state a cause of action and must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss the first, second, seventh, eighth and ninth causes of action for failure to state a claim, all references to the MiN NY DropBox account if Plaintiff does not voluntarily do so, and any and all relief which this Court may find just.

Dated: Brooklyn, New York
May 25, 2016

Respectfully submitted,

Lewis & Lin, LLC

   /s/ Justin Mercer
Justin Mercer, Esq.
*Attorneys for Defendants*