Thomas G. Jackson
tjackson@phillipsnizer.com
Elizabeth A. Adinolfi
eadinolfi@phillipsnizer.com
666 Fifth Avenue
New York, New York 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALONCLICK LLC, D/B/A MIN NEW YORK,<br><br>Plaintiff,<br><br>-against-<br><br>SUPEREGO MANAGEMENT LLC, MINDY YANG,<br><br>Defendants. | **16-cv-02555 (AT) (AJP)** |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

POINT I    MiN NY'S REPLEVIN, CONVERSION, AND TRESPASS CLAIMS
           (COUNTS 1, 2, AND 8) EACH STATE A CAUSE OF ACTION ............................ 4

POINT II   MiN NY'S BREACH OF FIDUCIARY DUTY CLAIM (COUNT 9)
           IS PROPERLY PLED ............................................................................................. 10

CONCLUSION ............................................................................................................................. 13

i

## TABLE OF AUTHORITIES

Page

### CASES

*Ardis Health, LLC, et al. v. Nankivell*,
2011 U. S. Dist. LEXIS 120738 (S.D.N.Y. Oct. 19, 2011) ..................................................... 6, 8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ..................................................................................................... 1

*Barber v. ActKnowledge, Inc.*,
24 Misc. 3d 1211(A), 2009 N.Y. Misc. LEXIS 1717 (Kings Co.
June 30, 2009) .................................................................................................................. 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................... 1, 12

*Byrne v. Barrett*,
268 N.Y. 199 (1935) ............................................................................................................. 10

*Compsolve, Inc. v. Neighbor*,
18 Misc. 3d 1104(A) (Sup. Ct. Erie Co. 2007) ...................................................................... 10

*Feiger v. Iral Jewelry, Ltd.*,
85 Misc. 2d 994 (Sup. Ct. N.Y. Co. 1975) ............................................................................ 10

*G.K. Alan Assoc., Inc. v. Lazzari*,
44 A.D.3d 95 (2d Dep't 2007) ............................................................................................... 10

*In re Alert Holdings, Inc.*,
148 B.R. 194 (Bankr. S.D.N.Y. 1992) ...................................................................................... 8

*In re Borders Grp., Inc.*,
2011 Bankr. LEXIS 4606 (Bankr. S.D.N.Y. Sept. 27, 2011) .............................................. 4, 8

*In re CTLI, LLC*,
528 B.R. 359 (S.D. Tex. 2015) ................................................................................................. 8

*In re Luby*,
438 B.R. 817 (E.D. Pa. 2010) ................................................................................................... 6

*Kaumagraph Co. v. Stampagraph Co.*,
235 N.Y. 1 (1923) .................................................................................................................. 10

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) .................................................................................................. 7

*Payrolls & Tabulating v. Sperry Rand Corp.*,
   22 A.D.2d 595 (1st Dep't 1965) ............................................................................................. 10

*Polanco v. NCO Portfolio Mgmt., Inc.*,
   23 F. Supp. 3d 363 (S.D.N.Y. 2014)........................................................................................ 9

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*,
   893 F. Supp. 285 (S.D.N.Y. 1995) ........................................................................................ 12

*Shmueli v. Corcoran Group*,
   9 Misc. 3d 589 (Sup. Ct. N.Y. Co. 2005) ............................................................................... 7

*Sprinkler Warehouse, Inc. v. Systematic Rain, Inc., d/b/a GPLAWN.com*,
   859 N.W.2d 527 (Minn. Ct. App. 2015).................................................................................. 6

*Thyroff v. Nationwide Mut. Ins. Co.*,
   8 N.Y.3d 283 (2007) ............................................................................................................... 7

*Weinstein Co. v. Smokewood Entm't Grp., LLC*,
   664 F. Supp. 2d 332 (S.D.N.Y. 2009)..................................................................................... 1

*Wornow v. Register.com, Inc.*,
   8 A.D.3d 59, 778 N.Y.S.2d 25 (1st Dep't 2004) .......................................................... 4, 5, 7, 8

*Zurakov v. Register.com, Inc.*,
   2001 WL 36241698 (Sup. Ct. N.Y. Co. July 25, 2001).................................................. 4, 5, 7, 8

*Zurakov v. Register.com, Inc.*,
   304 A.D.2D 176 (1st Dep't 2003)............................................................................................ 5

## STATUTORY AUTHORITIES

N.Y. Gen. Bus. Law § 349 ............................................................................................................ 1

N.Y. Gen. Oblig. Law §5-903........................................................................................................ 5

N.Y. Penal Law § 156.10 .............................................................................................................. 8

## RULES AND REGULATIONS

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 1

## PRELIMINARY STATEMENT

Plaintiff Salonclick, LLC, d/b/a MiN New York ("MiN NY"), filed this suit to regain control of its intellectual property, Internet and social media assets, and to prevent Defendants, SuperEgo Management LLC and Mindy Yang, from using MiN NY's assets to further Defendant Yang's new business enterprise, an e-commerce website, TheArtofLiving.Earth. Defendants attempt to sway the Court with their own version of the facts, painting this case as one of a wrongfully ousted business partner, rather than an independent contractor who was terminated and is seeking improperly to enrich herself with MiN NY's assets. Regardless of the tale Defendants spin, the Court may not consider their unsupported factual allegations on this motion. MiN NY is filing herewith an Amended Complaint to remove Count 7, which is the claim alleged pursuant to New York General Business Law § 349 for deceptive business practices, as well any allegations relating to MiN NY's Dropbox account. The remaining claims to which Defendants object are amply supported both factually and legally. When the Complaint is viewed in the light most favorable to MiN NY, Defendants' motion must be denied.

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To withstand a challenge under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss, the Court may consider exhibits to the complaint and documents incorporated by reference into the complaint. *Weinstein Co. v. Smokewood Entm't Grp.*, *LLC*, 664 F. Supp. 2d 332, 338 (S.D.N.Y. 2009).

1

## STATEMENT OF FACTS

Chad Murawczyk, MiN NY's principal, built a successful brand and business long before he met Yang, having founded Salonclick, LLC in 1999, nearly a decade before meeting Ms. Yang. Cmpl. ¶ 7. In approximately 2008, Yang, through her company SuperEgo Management LLC, was hired as an independent contractor to assist MiN NY with its graphic design, public relations and marketing needs, in particular, social media. Cmpl. ¶ 9.

Over time, MiN NY began having problems with both Yang's attitude and her work, particularly her lack of cooperation, refusal to take direction, and inability to complete tasks as directed. Cmpl. ¶ 12. In December of 2015, Murawczyk decided that Superego's services were no longer needed, and he told Yang that MiN NY was no longer going to be utilizing her services. Cmpl. ¶ 13. Subsequently, Yang began to use her access to MiN NY's social media accounts and online accounts to damage MiN NY and benefit her own enterprise. Cmpl. ¶ 15.

Since 2014, "Scent Stories" has been a trademark registered and owned by MiN NY, Federal Registration Number, 4620007. Cmpl., Exhibit A. MiN NY owns the Twitter account @ScentStories. Cmpl. ¶ 19. Yang seized control of the account after she was terminated. *Id.* Yang was able to do so because, when the Twitter account was created, Yang, without MiN NY's knowledge or consent, used her personal email account instead of her MiN NY account as the control account. *Id.* This meant that when MiN NY attempted to regain its access to, and control over, the account, Twitter was sending the confirmation code to Yang, and not to MiN NY. Cmpl. ¶ 23.

Yang added her website, mindyyang.info, to the Twitter page, and added the text "Limited Editions of Olfactory Art potions that transcend time and space. By Mindy Yang for MiN New York," thereby falsely promoting herself as the creator of MiN NY's products and

2

using the MiN NY name to falsely promote her business and falsely imply that MiN NY is associated with or endorses Yang and her business. Cmpl. ¶ 20.

Using the administrative access she was given to work on MiN NY's social media, Cmpl. ¶ 25, Yang seized control of other MiN NY social media assets. Cmpl. ¶ 24. Yang seized the Internet domain name "newyorkheart.org", which she created in the course of her work for MiN NY, and connected it to her business domain name, theartofliving.earth. Cmpl. ¶ 26. As a result, when someone tried to go to the www.newyorkheart.org website, they were instantly redirected to Yang's theartofliving.earth website. *Id.*

Yang did the same thing with MiN NY's Internet domain name, inventoryofexperiences.com. Cmpl. ¶ 26. This domain was purchased and developed by MiN NY to support a marketing campaign, which Yang worked on, for new fragrances being introduced to its Scent Stories line of fragrances. *Id.* After Yang took control of the website, anyone who typed "inventoryofexperiences.com" in their browser, or clicked on a preexisting link to it, was directed to a page that stated that it was curated by Mindy Yang and that contained a link, not to MiN NY's website, as was the original intent of the webpage's design, but to Yang's www.theartofliving.earth website. *Id.*

Long before Yang performed any work for MiN NY, MiN NY owned and operated the website mensgroomingessentials.com. Cmpl. ¶ 28. For a brief period, Yang had also redirected this domain so that when someone entered this website address in their browser, or clicked on a preexisting link, they would be instantly redirected to her www.theartofliving.earth website. *Id.* MiN NY was able to regain control of this website; however, when Yang discovered that she no longer had control of that site, Yang created the confusingly similar domain name

3

mensgroomingessentials.earth, which redirects users to the www.theartofliving.earth website.
*Id.*

MiN NY tried, largely unsuccessfully, to regain control of these domains before filing
this lawsuit. Cmpl. ¶ 29. All of the domains were registered through GoDaddy, the world's
largest publicly traded and accredited Internet domain registrar and web hosting company. *Id.*
Murawczyk contacted GoDaddy and verified the complete credit card number and company
billing information in order to become a verified user on the accounts. *Id.* However,
Murawczyk's efforts were largely ineffective because Yang, improperly utilizing the
administrative access she had been granted to MiN NY's GoDaddy account while she was
engaged by MiN NY (similar to what she did with the @ScentStories Twitter account), put a
secondary security passcode on the accounts. *Id.* Because Murawczyk did not have access to
that passcode and could not provide it to GoDaddy.com, they would not restore MiN NY's
access to the accounts or provide any information about the accounts. *Id.*

## POINT I
## MIN NY'S REPLEVIN, CONVERSION, AND TRESPASS CLAIMS
### (COUNTS 1, 2, AND 8) EACH STATE A CAUSE OF ACTION

Contrary to Defendants' assertion, both New York and federal law recognize that the
owner of a domain name or a social media account has a property interest in that asset. *See In re
Borders Group, Inc.*, 2011 Bankr. LEXIS 4606, at *38 (Bankr. S.D.N.Y. Sept. 27, 2011)
(treating social media accounts as property under New York law).

The cases relied upon by Defendants, *Wornow v. Register.com, Inc.*, 8 A.D.3d 59, 778
N.Y.S.2d 25 (1st Dep't 2004), and *Zurakov v. Register.com, Inc.*, 2001 WL 36241698 (Sup. Ct.
N.Y. Co. July 25, 2001), *rev'd in part*, 304 A.D.2D 176 (1st Dep't 2003), do not address the
issue presented in the instant case, namely, what is the remedy for the owner of domain names
and social media accounts when a third party improperly and without authorization takes control

4

of the domains and accounts, excludes the rightful owner, and uses the domains and accounts for its own purposes?

*Wornow* was a putative class action involving a claim arising out of a domain name registrar's automatic renewal of plaintiff's domain name registrations. The court held that the claim did not lie under General Obligations Law §5-903 because it was based on "a contract right that cannot exist separate and apart from the services performed by a registrar." *Wornow* is factually distinguishable from the instant case not only because there is no dispute with any of the service providers and there is no contract dispute, but also because it relied on a line of federal cases addressing whether a domain name could be garnished under Virginia law, again, an issue that is not present here. Moreover, *Wornow* explicitly states that it does not apply to cases involving trademarks, so by its terms it is inapplicable to any claims involving the @ScentStories Twitter account because MiN NY is the owner of the Scent Stories trademark.

Defendants claim that "to the extent that these counts assert that Defendants have in some way impacted the possessory right to any domain names (such as <InventoryofExperiences.com> and <NewYorkHeart.org>), they must be dismissed for failure to state a cause of action," but their claim is contradicted by *Zurakov*. While the trial court decision in *Zurakov* may have held that there is no property interest in a domain name, the Appellate Division, First Department implicitly rejected that holding. The First Department reversed the trial court, holding that "the exclusiveness of the use of a registered domain name is already a familiar concept in the law." *Zurakov v. Register.com, Inc.*, 304 A.D.2D 176, 180 (1st Dep't 2003) (citation omitted), and concluded that "whether 'registration' in the context of Internet domain names confers exclusive use and control presents a fact question that should not have been decided upon a motion to dismiss." *Id.* Conceptually, there is no way to describe the

nature of the right to exclusively use and control something other than as property right. Courts in other jurisdictions have recognized precisely this point, holding that domain names are property. *See, e.g., Sprinkler Warehouse, Inc. v. Systematic Rain, Inc., d/b/a GPLAWN.com*, 859 N.W.2d 527, 530-31 (Minn. Ct. App. 2015), *aff'd*, 2016 Minn. LEXIS 126 (Mar. 23, 2016) ("we conclude that domain names do constitute property); *In re Luby*, 438 B.R. 817, 829 (E.D. Pa. 2010) (domain names are "a species of property" subject to the same laws as other types of intangible property).

While neither MiN NY nor Defendants have found a New York state court decision that directly addresses the nature of a domain name owner's rights as against a third party who has improperly obtained control over the domain, there is federal case law that is directly on point. In *Ardis Health, LLC, et al. v. Nankivell*, 2011 U. S. Dist. LEXIS 120738 (S.D.N.Y. Oct. 19, 2011), a case that is remarkably similar to the instant case, the Honorable Naomi Buchwald granted the plaintiffs a preliminary injunction where a former employee refused to turn over the access information for the plaintiffs' websites, email accounts and social media accounts. That is precisely what the Complaint alleges here: that Yang used her access to MiN NY's domains and social media accounts to change the access information so she could have exclusive control of the assets.

In *Ardis,* the defendant's duties included "producing videos and maintaining websites, blogs, and social media pages in connection with the online marketing of plaintiffs' products" and her "responsibilities with respect to plaintiffs' online presence included maintaining passwords and other login information for websites, email accounts, and social media accounts, as well as for third-party servers where plaintiffs stored content (collectively, 'Access Information')." *Id*., at *2-3.

6

Judge Buchwald found that:

> It is uncontested that plaintiffs own the rights to the Access
> Information. Defendant's unauthorized retention of the information
> may therefore form the basis of a claim of conversion. *See Thyroff
> v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006)
> ("According to New York law, '[c]onversion is the unauthorized
> assumption and exercise of the right of ownership over goods
> belonging to another to the exclusion of the owner's rights.'"). The
> likelihood of plaintiffs' success on the merits of this claim is
> unquestioned, and plaintiffs have clearly established their right to
> injunctive relief. Defendant must provide them with the requested
> Access Information."

*Id.*, at *8-9.

Defendants' claim that this holding is "dicta" is baseless. Judge Buchwald based her

grant of injunctive relief on her conclusion that the plaintiffs' likelihood of success on their

conversion claim was "unquestioned". Obviously, if such intangible property could not be

converted, Judge Buchwald could not have concluded that plaintiffs had a likelihood of success

on the merits on their conversion claim.

Moreover, since the decisions in *Wornow* and *Zurakov* were issued, New York courts

have expanded the law of conversion to extend to intangible property. *See Thyroff v. Nationwide

Mut. Ins. Co.*, 8 N.Y.3d 283, 291 (2007) (finding that "[t]he lack of a compelling reason to

prohibit conversion for redress of a misappropriation of intangible property underscores the need

for reevaluating the appropriate application of conversion" and holding that the cause of action

of conversion applies to computer data); *Shmueli v. Corcoran Group*, 9 Misc. 3d 589 (Sup. Ct.

N.Y. Co. 2005) (noting expansion of conversion doctrine in other states to include conversion of

domain names, and holding computerized client data can be converted). In reaching its decision

in *Thyroff*, the New York Court of Appeals pointed to *Kremen v. Cohen*, 337 F.3d 1024, 1033-

1034 (9th Cir. 2003), which held that domain names are intangible property and recognized a

cause of action for conversion under California law for the misappropriation of a domain name.

7

While *Thyroff* limited its holding to the conversion of computer data, it did so because that was the specific question the Second Circuit Court of Appeals had certified, leaving open the question of whether other intangible property, such as domain names, can be converted. Accordingly, *Wornow* and *Zurakov* are not only factually distinguishable, they are contrary to the later cases that have recognized the need to expand the doctrine of conversion to include intangible assets.

Other courts have held that social media accounts such as Facebook and Twitter accounts can be treated as property given their ability to serve as subscriber or customer lists, which are regarded as property. *See, e.g., In re CTLI, LLC*, 528 B.R. 359 (S.D. Tex. 2015); *In re Borders Grp., Inc.*, 2011 Bankr. LEXIS 4606, at *38 (Bankr. S.D.N.Y. Sept. 27, 2011); *In re Alert Holdings, Inc.*, 148 B.R. 194, 203 (Bankr. S.D.N.Y. 1992).

Furthermore, the trespass and conversion causes of action, which arise under common law, are based on Yang's unlawful access to and exclusion of Salonclick from access to and use of "computer services" which rightly belong to MiN NY. New York law recognizes and protects property interests in "computer services" and considers the unauthorized access of such services a trespass. N.Y. Penal Law § 156.10.

Moreover, Defendants' argument elevates form over substance. MiN NY's Complaint clearly alleges that Yang converted MiN NY's Internet domains and social media accounts by depriving MiN of access to those accounts and by diverting the necessary access to that information to her personal email account. Under *Ardis,* such diversion of access information constitutes a conversion, without which Defendants would not have been able to take control of the Internet domains and social media accounts. Therefore, even if the Court were to conclude that domain names and social media accounts are not property that can be converted, the

Complaint still pleads sufficient facts to make it plausible on its face that Defendants converted MiN NY's access information for its Internet domains and social media accounts.

Nor are Plaintiff's claims moot. "A party cannot avoid a conversion claim because it eventually returned the property in question. Returning property to the rightful owner … does not absolve defendants of all liability from the alleged conversion. A claim for conversion will exist even when the deprivation is partial or temporary." *See Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). While Defendants assert that MiN NY's claims for replevin, conversion and trespass are moot because "Yang does not contest" the transfer of the accounts and domain names at issue, this statement is both inaccurate and insufficient to render the claims moot. To date, Yang has not entered into a stipulation of settlement acknowledging that she does not challenge MiN NY's ownership of the social media accounts and domain names at issue. And, as Defendants note, the New York Heart Facebook page has yet to be returned to MiN NY's control. Whether or not there are technical issues with Facebook that have impeded the transfer, the fact remains that MiN NY still does not have control of this account. Therefore the claims are not moot.

More importantly, Yang continues to assert that she has some form of ownership interest in MiN NY, claiming that she was a partner and joint venturer with Mr. Murawczyk. Yang asserts that she intends to seek "appropriate recourse" for having been, in her view, forced out of the business. So long as Yang intends to pursue any claim to an ownership interest in MiN NY or in any of its assets, MiN NY cannot agree to dismiss claims that involve the issue of ownership, as its replevin, conversion, and trespass claims all do.

Furthermore, dismissing the replevin, conversion, and trespass claims will not serve to narrow any of the factual issues that must be resolved in this case. MiN NY's claims for

Statutory Trademark Infringement (Third Cause of Action); Common Law Trademark Infringement (Fourth Cause of Action); Common Law Unfair Competition (Fifth Cause of Action); Statutory Unfair Competition, New York GBL § 360-l (Sixth Cause of Action), and Breach of Fiduciary Duty (Eighth Cause of Action), are all based in large part on the same conduct that supports the replevin, conversion, and trespass claims. Additionally, MiN NY seeks monetary damages under both the Conversion and Trespass claims, which also prevents the claims from being rendered moot.

## POINT II
## MIN NY'S BREACH OF FIDUCIARY DUTY CLAIM (COUNT 9) IS PROPERLY PLED

The case cited in Defendants' brief, *Payrolls & Tabulating v. Sperry Rand Corp.*, 22 A.D.2d 595, 598 (1st Dep't 1965), does not address whether an independent contractor acts as an agent and hence owes the principal fiduciary duties. New York law is clear that "an independent contractor is an agent that owes fiduciary and loyalty duties to his or her principal." *Barber v. ActKnowledge, Inc.*, 24 Misc. 3d 1211(A), 2009 N.Y. Misc. LEXIS 1717, at *5 (Kings Co. June 30, 2009). *See also Feiger v. Iral Jewelry, Ltd.*, 85 Misc. 2d 994 (Sup. Ct. N.Y. Co. 1975), *aff'd*, 41 N.Y.2d 928 (1977); *G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 100-101 (2d Dep't 2007); *Compsolve, Inc. v. Neighbor*, 18 Misc. 3d 1104(A) (Sup. Ct. Erie Co. 2007). The duty of an agent or employee "not to use confidential knowledge acquired in his employment in competition with his principal is implicit in the relation. … It is an absolute and not a relative duty." *Byrne v. Barrett*, 268 N.Y. 199, 206 (1935), *citing Kaumagraph Co. v. Stampagraph Co.*, 235 N.Y. 1, 6 (1923).

Defendants attempt to distinguish these authorities by creating an unsupported rule that an independent contractor can only have fiduciary duties where there is a written contract. But

they cite no authority for such a restriction, and hedge their assertion of the new rule by stating that cases where an independent contractor is found to have fiduciary duties "frequently" involve written contracts. *Barber*, 24 Misc. 3d 1211(A), 2009 N.Y. Misc. LEXIS 1717, at *5, states that the scope of an independent contractor's fiduciary duties "depends on the terms of the agreement." There is nothing that prevents this Court from determining what the terms of the agreement between MiN NY and Defendants were simply because the agreement was not in writing.

The Complaint more than adequately pleads facts that demonstrate the agency relationship between Yang and MiN NY regardless of how many hours she actually worked. The Complaint alleges that Yang was retained by MiN NY because "MiN NY was in need of assistance with graphic design, public relations, and marketing, particularly social media." ¶ 9. The Complaint also states that in order to carry out her work for MiN NY, Yang was given "access to MiN NY's computer systems and online accounts", ¶ 11 and that after her termination "Yang began to use her access to MiN NY's social media accounts and online accounts to damage MiN NY and benefit her own enterprise." ¶ 15. The Complaint further states that Yang created the Twitter account and, when she did so, "without MiN NY's knowledge or consent Yang used her personal email account instead of her MiN NY account." ¶ 19.

The Complaint states that "Yang had administrative access to both the website and the Facebook page because she helped with social media." ¶ 25. The Complaint further states that the inventoryofexperiences.com "domain was purchased and developed by MiN NY to support a marketing campaign for new fragrances being introduced to the Scent Stories line [and that] Yang worked on this project". ¶ 27. The Complaint also alleges that "because Yang handled

11

MiN NY's social media accounts, she was permitted to and directed by MiN NY to purchase some of these domains using her MiN NY corporate credit card." ¶ 29.

Far from being bare allegations, the facts set forth in the Complaint satisfy the *Twombly* standard and provide the Court with "plausible grounds to infer" that there was an agency relationship between Yang and MiN NY insofar as MiN NY's domain names and social media accounts are concerned because Yang was granted administrative access in order to handle MiN NY's social media accounts on its behalf. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). It is undisputed that when Yang purchased the inventoryofexperiences.com domain name, she did not purchase it in her individual capacity, but as MiN NY's agent. And as MiN NY's agent, once the domain name was purchased, she had a duty not to use the access she had to the account to take the domain name and use it for her own purposes.

Defendants' citation of *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995), actually supports MiN NY's position. The court held:

> Under New York law, a fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over an other."

For approximately seven years MiN NY reposed its trust and confidence in Yang to handle social media and online accounts on MiN NY's behalf. The Complaint more than adequately alleges that Yang was given "control and responsibility" for MiN NY's Internet domains and social media accounts as part of, and in order to carry out, her work. She set up the @ScentStories Twitter account and purchased various domain names on MiN NY's behalf. She managed Facebook pages on MiN NY's behalf, for which MiN NY permitted her to have administrative access to the accounts. In all of her MiN NY-related online and social media activities, she was acting as MiN NY's agent and therefore had a fiduciary duty not to use the

12

confidential information she acquired, including the access information to the accounts, to damage and compete with MiN NY.[1] Instead, Yang chose to breach that duty by using that confidential access information to take control of MiN NY's online and social media accounts to promote herself, and her own enterprise, and to drive consumers to her e-commerce website.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Respectfully submitted,

Dated:     New York, New York
          June 8, 2016

PHILLIPS NIZER LLP
*Attorneys for Plaintiff*

By: /s/ Elizabeth A. Adinolfi
     Thomas G. Jackson
     Elizabeth A. Adinolfi
     Office and Post Office Address
     666 Fifth Avenue
     New York, NY 10103-0084

---

[1] MiN NY is not claiming that Yang is prohibited from operating a competing business. She is free to compete with MiN NY so long as she does not use MiN NY's assets or confidential information to do so.

13