UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED: 1/18/17              │
└─────────────────────────────────┘
```

SALONCLICK LLC d/b/a MIN NEW YORK,

               Plaintiff,

      -against-

SUPEREGO MANAGEMENT LLC and
MINDY YANG,

               Defendants.

16 Civ. 2555 (KMW)

**MEMORANDUM OPINION
AND ORDER**

KIMBA M. WOOD, District Judge:

    Plaintiff, Salonclick LLC d/b/a Min New York ("MiN NY"), brings this action against

its former independent contractor, Defendants Mindy Yang and SuperEgo Management LLC,

for trademark infringement and causes of action related to Defendants' unauthorized use of

Plaintiff's domain names and social media accounts.  Defendants move to dismiss Plaintiff's

causes of action for replevin, conversion, and trespass on the ground that Plaintiff cannot have

a property right in domain names or social media accounts.  Defendants also move to dismiss

Plaintiff's breach of fiduciary duty cause of action for failing to state a claim.  For the reasons

set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

    Salonclick LLC was founded by Chad Murawczyk in 1999, and at all times he has

been the sole owner.  Am. Compl. ¶ 7, ECF No. 16.  Salonclick LLC has done business under

the name "Min New York," through which it has manufactured and sold hair color, hair care,

and skin care products.  *Id.*  MiN NY also sells fragrences and is an "innovative

manufacturer, distributor, retailer and curator that specializes in formulating and identifying

---

[1] The following facts are taken from the Amended Complaint and are assumed to be true for purposes of
Defendants' motion to dismiss.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also
Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("When considering a motion to dismiss . . .
for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint.").

exceptional fragrance and grooming products for both men and women." *Id.* ¶ 3. MiN NY has utilized a variety of website domain names including www.mensgroomingessentials.com, *id.* ¶ 7, and www.inventoryofexperiences.com, *id.* ¶ 27. Since at least 2007, MiN NY has utilized the phrase "The Art of Living" as a tagline in packaging, advertising, and online. *Id.* ¶ 18. In 2014, MiN NY launched a house brand of perfumes called "Scent Stories," for which MiN NY has been awarded a trademark. *Id.* ¶¶ 16-17 & Ex. A. Murawczyk also ran www.newyorkheart.org and its corresponding Facebook page, a vehicle for advocating against ivory poaching, which has been affiliated with MiN NY to promote it as a "socially responsible and concerned business." *Id.* ¶ 24.

MiN NY hired Yang, through her company SuperEgo, as an independent contractor to assist with "graphic design, public relations, and marketing, particular social media." *Id.* ¶¶ 9, 10. The business relationship deteriorated, *see id.* ¶ 12, and, in December 2015, Murawczyk told Yang that he would no longer be needing her services, *id.* ¶ 13. In retribution, Yang used her access to MiN NY's website and social media accounts for Yang's own benefit. *Id.* ¶ 15. Yang created a new online business www.theartofliving.earth, *id.* ¶ 21, and redirected MiN NY's websites—including www.mensgroomingessentials.com, www.inventoryofexperiences.com, and www.newyorkheart.org —to Yang's website, *id.* ¶¶ 26-28. Yang has also used MiN NY's social media pages—such as the Twitter page @ScentStories and the New York Heart Facebook page—to promote Yang's new online business. *Id.* ¶¶ 22, 23, 25. For instance, a post on the @ScentStories Twitter account told a customer to write to the e-mail address hello@TheArtOfLiving.Earth, an e-mail address for Yang's new business, for invitations to special events. *Id.* ¶ 21 & Ex. B. Yang also created

her own domain name, www.mensgroomingessentials.earth, which redirected to

www.theartofliving.earth. *Id.* ¶ 28.

This action was filed in March 2016 in New York State Supreme Court and was timely

removed to this court in April. *See* ECF No. 1-2. On May 25, 2016, Defendants filed a

motion to dismiss pursuant to Federal Rule 12(b)(6). ECF No. 14. The case was reassigned to

the undersigned on November 22, 2016.

## II. LEGAL STANDARD

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient

factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court

accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor

of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108

(2d Cir. 2010).

## III. DISCUSSION

Defendants move to dismiss count one (replevin), count two (conversion), and count

seven[2] (trespass) on the ground that Plaintiff fails to allege a cognizable property or possessory

interest in the domain names and social media accounts that were allegedly taken unlawfully.

Def. Mem. 4, ECF No. 15. Further, Defendants move to dismiss count eight (breach of

fiduciary duty) for failure to state a claim. *Id.* at 6.

---

[2] On June 8, 2016, pursuant to Rule 15(a)(1)(B), Plaintiff filed an amended complaint, which removed the cause of action originally numbered count eight. *See* ECF No. 20. In a letter to the Court, Defendants stated that they would rely upon their previously filed memorandum of law to move to dismiss the amended complaint. ECF No. 22. Accordingly, the parties' briefing refers to the trespass claim as count eight and the breach of fiduciary duty claim as count nine. The Court refers to the counts as listed in the amended complaint.

A.  Replevin, Conversion, and Trespass

Plaintiff alleges that Defendants have committed replevin and conversion by "wrongfully, without authority or permission, tak[ing] MiN NY's assets, to wit, the @ScentStories Twitter account, the inventoryofexperiences.com domain name, the newyorkheart.org domain name, and the New York Heart Facebook page," Am. Compl. ¶¶ 31, 34, and that Defendants have committed trespass by accessing "without authorization . . . multiple computer services which rightly belong to MiN NY," *id.* ¶ 62, which also are violations of criminal law, *id.* ¶ 63.  Defendants argue that Plaintiff cannot have a cognizable property or possessory interest in access to domain names or social media accounts, and thus that Plaintiff cannot state a claim.  Def. Mem. 4, ECF No. 15.

In 2006, the Second Circuit Court of Appeals certified to the New York Court of Appeals the question "whether electronic data, computer programs, or electronic data saved in computer programs can support a claim for conversion under New York law." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir.).  In its answer, New York Court of Appeals noted the long-standing general rule that an action for conversion cannot normally be brought with respect to intangible property, as well as the "merger" doctrine exception, which recognizes "that an intangible property right can be united with a tangible object for conversion purposes," such as a stock certificate for the ownership of a stock share. *Thyroff v. Nationwide Mut. Ins.* Co., 8 N.Y.3d 283, 289 (2007) (citing *Agar v. Orda,* 264 N.Y. 248, 251 (1934)).  The New York Court of Appeals concluded that the time to recognize conversion of intangible property "has arrived": "It cannot be seriously disputed that society's reliance on computers and electronic data is substantial, if not essential.  Computers and digital

information are ubiquitous and pervade all aspects of business, financial and personal

communication activities." *Id.* at 291-92.  The New York Court of Appeals concluded:

> [T]he tort of conversion must keep pace with the contemporary realities of widespread computer use. We therefore answer the certified question in the affirmative and hold that the type of data that Nationwide allegedly took possession of—electronic records that were stored on a computer and were indistinguishable from printed documents—is subject to a claim of conversion in New York. Because this is the only type of intangible property at issue in this case, we do not consider whether any of the myriad other forms of virtual information should be protected by the tort.

*Id.* at 292–93.  The Court of Appeals did not answer the direct question at issue in this case, nor

has it done so in subsequent years.

Defendants rely primarily on *Wornow v. Register.Com, Inc.*, 8 A.D.3d 59, 60 (N.Y. App.

Div. 2004), which was decided before *Thyroff*, for the proposition that a domain name is not

property under New York law.  Def. Mem. 4-5.  *Wornow* involved the automatic renewal of the

plaintiffs' domain name registrations, which the plaintiffs argued violated New York General

Obligations Law § 5-903's notice requirements for "provision of a contract for service,

maintenance or repair to or for any real or personal property." *Wornow*, 8 A.D.3d at 59-60.  The

Appellate Division stated that "[w]e are in accord with authorities holding that a domain name

that is not trademarked or patented is not personal property, but rather a contract right that cannot

exist separate and apart from the services performed by a [domain name] registrar such as

defendant." *Id.* (citing *Network Solutions, Inc. v Umbro Intl., Inc.*, 259 Va. 759, 770 (2000);

*Lockheed Martin Corp. v Network Solutions*, 194 F.3d 980, 984-985 (9th Cir. 1999)).  *Wornow* is

not binding in this case because, unlike the present case, *Wornow* focused exclusively on the

domain name registration service, as opposed to possession and control of a website.

Further, the New York Court of Appeals in *Thyroff* cited with approval the Ninth Circuit

Court of Appeals' opinion in *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003), which held that

an individual can have an intangible property right in a domain name, which can be subject to conversion under California law. *Thyroff*, 8 N.Y.3d at 290 (citing *Kremen*, 337 F.3d at 1033-34). *Kremen*, applying a broad formulation of the merger rule similar to the one adopted in *Thyroff*, found that domain names have at least "*some* connection to a document or tangible object," *Kremen*, 337 F.3d at 1033, in that domain names are registered in the Domain Name System ("DNS"), which is "the distributed electronic database that associates domain names," *id.* at 1034. The fact that the DNS "is stored in electronic form rather than on ink and paper is immaterial," as "[i]t would be a curious jurisprudence that turned on the existence of a *paper* document rather than an electronic one." *Id.* The Ninth Circuit concluded, thus, that a domain name satisfies the merger rule and can be the object of conversion.

Just a few years ago, the Honorable Naomi Reice Buchwald, in a case almost identical to this one, concluded that online accounts and websites can be the object of conversion under New York law. *Ardis Health, LLC v. Nankivell*, No. 11 Civ. 5013, 2011 WL 4965172, at *3 (S.D.N.Y. Oct. 19, 2011). In that case, the defendant was responsible for the "websites, blogs, and social media pages in connection with the online marketing of plaintiffs' products" and managed the "passwords and other login information for websites, email accounts, and social media accounts, as well as for third-party servers where plaintiffs stored content (collectively, 'Access Information')." *Id.* at *1. After the parties' business relationship broke down, the defendant "declined to return the computer and [Access I]nformation," so that "Plaintiffs [were] unable to access a number of their online accounts and websites to update them as needed for their marketing purposes." *Id.* at *2. Citing the Second Circuit's *Thyroff* opinion, Judge Buchwald concluded: "It is uncontested that plaintiffs own the rights to the Access

Information.  Defendant's unauthorized retention of the information may therefore form the basis of a claim of conversion." *Id.* *3.

Similarly, in 2014, the Honorable Vincent L. Briccetti noted that—although an action for conversion "will not normally lie" without a physical item that can be misappropriated, *Triboro Quilt Mfg. Corp. v. Luve LLC*, No. 10 Civ. 3604, 2014 WL 1508606, at *9 (S.D.N.Y. Mar. 18, 2014) (citing *Thyroff*, 8 N.Y.3d at 289)—"New York courts recognize exceptions when the rightful owner of intangible property is prevented from creating or enjoying a 'legally recognizable and protectable property interest in his idea' such as by being prevented from registering the domain name for a website or being denied access to a database he created," *id.* (citing *Trustforte Corp. v. Eisen*, 10 Misc. 3d 1064(A), 814 N.Y.S.2d 565 (Table), 2005 N.Y. Slip Op. 52116(U), at *2 (Sup. Ct. 2005)).

State courts that have considered this question have found that intangible property can be converted.  *See, e.g.*, *Sprinkler Warehouse, Inc. v. Systematic Rain, Inc.*, 880 N.W.2d 16, 23 (Minn. 2016) (Internet domain name constitutes intangible personal property); *Integrated Direct Mktg., LLC v. May*, 495 S.W.3d 73, 76 (Ark. 2016) (intangible property, such as electronic data, can be converted); *Eysoldt v. Pro Scan Imaging*, 957 N.E.2d 780, 786 (Ohio Ct. App. 2011) ("At common law, the general rule was that only tangible chattels could be converted.  But the law has changed, and courts have held that identifiable intangible property rights can also be converted." (footnote omitted)); *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 543 (Nev. 2008) (applying *Kremen*, holding that intangible property, such as a contractor's license, can be converted); *Fremont Indem. Co. v. Fremont Gen. Corp.*, 55 Cal. Rptr. 3d 621, 643 (Cal. Ct. App. 2007) (holding a net operating loss as intangible property). *But see, e.g.*, *Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381,

392 (Tenn. Ct. App. 2014) ("Conversion is the wrongful appropriation of another's tangible property; an action for the conversion of intangible personal property is not recognized in Tennessee.").

The Court holds that Plaintiff has stated a claim for conversion of its domain name and social media accounts under New York law. Similarly, Plaintiff has sufficiently pled a cause of action for replevin, which requires that "defendant is in possession of certain property of which the plaintiff claims to have a superior right." *Nissan Motor Acceptance Corp. v. Scialpi*, 944 N.Y.S.2d 160, 162 (App. Div. 2012).

Finally, "[c]ourts applying New York law generally treat claims of trespass to intangible property as claims for trespass to chattels." *Manchanda v. Google*, No. 16 Civ. 3350, 2016 WL 6806250, at *5 (S.D.N.Y. Nov. 16, 2016) (citing *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005)). "Under New York law, 'trespass to a chattel may be committed by intentionally . . . using or intermeddling with a chattel in the possession of another, where the chattel is impaired as to its condition, quality, or value.'" *Id.* (alteration in original) (quoting *Register.com v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)). "[L]iability only obtains on this cause of action if a defendant causes harm to 'the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time.'" *Jetblue Airways Corp.*, 379 F. Supp. at 328 (alterations in original) (quoting *Sch. of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804, 808 (Sup. Ct. 2003)). Although Plaintiff has alleged that "Yang's seizure of [the www.inventoryofexperiences.com] domain has impaired MiN NY's ability to launch this new marketing campaign," Am. Compl. ¶ 27, which has caused Defendants to be "indebted to MiN NY in an amount to be determined at trial," *id.* ¶ 64, Plaintiff has not alleged that Defendants' trespass has caused injury *to the*

*chattel*—that is, the domain names or social media accounts—particularly now that Plaintiff has possession of most, if not all, of the accounts, *see* ECF Nos. 11, 12. The Court concludes that Plaintiff has failed to state a claim for trespass.

Accordingly, Defendants' motion to dismiss is GRANTED as to count seven and DENIED as to counts one and two.

### B.  Breach of Fiduciary Duty

"[I]n order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Estrada v. Dugow*, No. 15 Civ. 3189 , 2016 WL 1298993, at *4 (S.D.N.Y. Mar. 31, 2016) (quoting *Poon v. Roomorama, LLC*, No. 09 Civ. 3224, 2009 WL 3762115, at *3 (S.D.N.Y. Nov. 10, 2009)).  "Under New York law, a fiduciary relation exists between two persons when one of them is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation." *Mueller v. Michael Janssen Gallery Pte. Ltd.*, No. 15 Civ. 4827, 2016 WL 7188151, at *2 (S.D.N.Y. Dec. 1, 2016) (quoting *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005)).  In describing the hallmark of a fiduciary relationship, "New York courts have generally described it as one in which a party 'reposes confidence in another and reasonably relies on the other's superior expertise or knowledge.' *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191 (S.D.N.Y. 2011) (quoting *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 550 (S.D.N.Y. 2007)).  "[A]n arms-length business relationship does not give rise to a fiduciary obligation." *WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (App. Div. 2001).  On the contrary, "a higher level of trust than [is] normally present in the marketplace between those

involved in arm's length business transactions" is required. *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116, 2009 WL 321222, at *12 (S.D.N.Y. Feb. 9, 2009). "[T]he fact that an individual is labeled an 'independent contractor' does not defeat the existence of a fiduciary relationship where one would otherwise exist." *Id.* at *11.

Plaintiff's eighth cause of action for breach of fiduciary duty should not be dismissed. Plaintiff alleges that "[a]s an independent contractor, Yang acted as MiN NY's agent, and as such owed MiN NY, the principal, fiduciary duties." Am. Compl. ¶ 66. Plaintiff points to allegations in the amended complaint that Yang created the @ScentStories Twitter account, *id.* ¶ 19, had administrative access to the New York Heart website and Facebook page, *id.* ¶ 25, worked on the www.inventoryofexperiences.com project, *id.* ¶ 27, and was "permitted and directed by MiN NY to purchase some of these domains using her MiN NY corporate credit card," *id.* ¶ 29.  Taking the allegations as true, Plaintiff has plausibly alleged that Yang was hired to advise Plaintiff, that Plaintiff would reasonably rely on Yang's superior knowledge and expertise, and that Yang would act on Plaintiff's behalf. *See, e.g.*, *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (App. Div. 1987) (holding allegations that "a highly paid consultant [who was hired] to give advice and act for [the employer's] benefit" was "sufficient to state a claim for this tort").  In particular, the fact that Yang had and used a MiN NY corporate credit card suggests a higher level of trust than a normal arm's length business interaction.  The Court therefore DENIES Defendants' motion to dismiss Plaintiff's eighth cause of action.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED as to count seven and DENIED as to counts one, two, and eight.

SO ORDERED.

Dated:  January 18, 2017
        New York, New York

                                        KIMBA W. WOOD
                                        United States District Judge