THOMAS JACKSON (TJ5706)
ELIZABETH A. ADINOLFI (EA3557)
PHILLIPS NIZER LLP
666 Fifth Avenue, 28th Fl.
New York, NY 10103
tjackson@phillipsnizer.com
eadinolfi@phillipsnizer.com
Telephone: (212) 977-9700
*Attorneys for Plaintiff Salonclick LLC*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALONCLICK LLC d/b/a MIN NEW YORK,<br><br>Plaintiff,<br><br>- against -<br><br>SUPEREGO MANAGEMENT LLC and<br>MINDY YANG,<br><br>Defendants. | **16-cv-02555 (KMW)**<br><br>**SECOND CONSOLIDATED AMENDED COMPLAINT** |

Plaintiff, SALONCLICK LLC d/b/a MIN NEW YORK ("MiN NY"), by its attorneys,

Phillips Nizer LLP, for its Second Consolidated Amended Complaint against Defendants

SUPEREGO MANAGEMENT LLC ("Superego") and MINDY YANG ("Yang"), allege as

follows:

1.      This is an action for replevin, conversion, trademark infringement, unfair

competition, and breach of fiduciary duty.  Plaintiff filed this suit to regain control of MiN NY's

intellectual property and its Internet and social media assets, and to prevent Defendants from

using Plaintiff's assets to further Yang's new business enterprise, an e-commerce website,

TheArtofLiving.Earth.

1302653.4

2.      MiN NY is a limited liability company duly organized and existing under the laws of the State of Pennsylvania.  MiN NY maintains a principal place of business at 117 Crosby Street, New York, New York.

3.      MiN NY is an innovative manufacturer, distributor, retailer and curator that specializes in formulating and identifying exceptional fragrance and grooming products for both men and women.  It sells both its own products under the MiN NY brand name, as well as products from difficult to find brands from around the world.

4.      Upon information and belief, Superego is a limited liability company duly organized and existing under the laws of the State of New York and maintains a principal place of business at 401 Park Avenue South, 10th Floor, New York, New York.

5.      Upon information and belief, Superego is in the business of providing marketing and graphic design consulting services.

6.      Upon information and belief, Yang is the sole owner of Superego and is an individual domiciled in the State of New York.

### SUBJECT MATTER JURISDICTION AND VENUE

7.      This action arises under the Lanham Act, 15 U.S.C. § 1051, et seq., and the laws of the State of New York.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367.

8.      This Court has supplemental jurisdiction over the claims in this Complaint that arise under the statutory and common law of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim and the threatened and actual harm to Plaintiff occurred in this District by reason of Defendants' conduct as alleged below.

10.      Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1400(a) because, upon information and belief, Defendants reside or may be found in this district.

## ALLEGATIONS COMMON TO ALL CLAIMS

11.      Plaintiff Salonclick LLC was founded by Chad Murawczyk ("Murawczyk") in 1999.  Salonclick started doing business as "MiN," a reference to the Egyptian god of male virility.  When Murawczyk moved to New York City in 2000, the name evolved into "MiN New York" as a play on the phrase "A New York Minute". This was at least six years before Yang and Murawczyk met.  Through MiN NY, Murawczyk manufactured hair color, hair care and skin care products under the "MiN New York" brand name.

12.      In January of 2000, Murawczyk filed with the United States Patent and Trademark Office ("USPTO") to register the trademark "MiN".  On October 1, 2002, the USPTO issued Registration No. 2,628,795 for the "MiN" mark, annexed hereto as Exhibit A.

13.      MiN NY sold its grooming products to salons, spas and directly to consumers. One of the domain names it purchased and utilized was mensgroomingessentials.com.

14.      In or around June of 2006, Murawczyk and Yang met and began a personal relationship that lasted approximately two and a half years, ending in 2008.

15.      At the time their relationship began, Yang was working in the fields of marketing and graphic design, and was considering leaving her employer to form her own company.  Upon information and belief, in 2007, she formed Superego.

16.     At approximately the same time, Murawczyk was exploring opening a boutique to expand MiN NY's product line of salon quality products to include high end, niche fragrances. Murawczyk did not have experience as a retailer, and sought to use the boutique as an incubator to understand the fragrance market and consumer interests around fragrances. This was a significant step towards his long time goal of developing a line of exclusive fragrances under the MiN NY brand.

17.     At all relevant times, Murawczyk had sole financial responsibility for MiN NY. He was the signatory on all leases and financial instruments, and personally guaranteed MiN NY's financial obligations. He had no outside investors or business partners. He bore all financial risk for MiN NY's success or failure.

18.     Murawczyk's expertise came from a career entirely in the beauty industry. He started in high school, working at a beauty supply store; in college he studied marketing and business; and immediately after college worked for a large beauty product distribution company. He rose to become the regional manager of American Crew, the market leading men's grooming brand that was acquired by Revlon.

19.     Murawczyk was then hired as Director of Strategic Business Development at Tressa, a large beauty manufacturer where he led both the Marketing and Sales Departments, overseeing a staff of more than 30 people.

20.     Prior to opening the Min NY boutique, Murawczyk did all of MiN's packaging design and logo creation. He also handled all marketing and product positioning for the company. In addition to his finance and manufacturing expertise, he is globally recognized as a senior level strategic marketing expert in the beauty industry. From its inception, he was the name and the face associated with MiN NY.

21.     However, he knew that he would require assistance with the design and marketing work, particularly social media, needed to launch a retail establishment.   Yang, who was launching her own design and marketing company, had the necessary skills and experience, although she lacked experience with fragrance, beauty products, manufacturing, distribution, production and European luxury goods.

22.     Upon information and belief, Yang wanted to have the freedom to take on other clients, so she began working through Superego for MiN NY.  Superego was paid for all of Yang's work, and in certain years, was paid bonuses.

23.     At no point in time did Yang or Superego have any ownership interest in MiN NY.

24.     In or about 2009, MiN NY opened its flagship boutique in SoHo.  In addition to its salon products, MiN NY also sells unique, difficult to find perfumes and fragrance products from independent perfumeries around the world.

25.     Yang performed various tasks for MiN NY related to graphic design, marketing, assistance with public events, and administrative support.  She was not restricted from working for anyone else, or on her own projects.  She was not required to work any set hours, nor was she required to be physically present at MiN NY's office or boutique.  She could work remotely and had access to MiN NY's computer systems and online accounts.

26.     In or about 2010, Yang assumes the position of Vice President of MiN NY.

27.     In or about 2011, MiN NY wanted to include a logo on its website and for use with product branding.  It adopted the gryphon, a mythological creature, standing on a shield. By December, 2011 MiN NY had incorporated the logo into its website.  Exhibit B (Print out of MiN NY website from December 2011).

28.    Upon information and belief, the logo was created using images of a gryphon and shield MiN NY purchased from Getty Images.   Exhibit C (Print out from Getty Images).

29.    Over time, Yang began to play a larger role in MiN NY, assisting in managing the staff and boutique, in addition to her marketing, social media and design work, while Murawczyk focused on the financing, logistics, production, manufacturing and sourcing aspects of the business.  Yang was involved in making employment decisions for the business, managing the employees, and retail operations.

30.    In approximately 2012, after several years of learning the ins and outs of the high end fragrance market, Murawczyk decided it was time to explore creating a MiN NY fragrance line.  In order to create a "brand umbrella" for all of the different products it sold, MiN NY adopted the tagline "The Art of Living." It has been used on the banner that hangs outside of MiN NY's store.  It is used on MiN NY's packaging and in advertising.  It is used on MiN NY's website.  It is used in articles and other media coverage.

31.    Working with master perfumers in Grasse, France, MiN NY developed a collection of fragrances that became known as Scent Stories Volume I.  Each Scent Stories product comes with a Certificate of Authenticity, which Murawczyk personally signs.  At the bottom of the Certificate it reads "MiN NEW YORK ‖ THE ART OF LIVING."

32.    Yang's role in Scent Stories was to develop the marketing strategy and materials to promote the collection.  She was involved in the creation of the some of the names for the various fragrances, and she designed "look books" and other marketing materials, using art work, poetry and text to evoke the qualities of the different fragrances.  The work she produced for Scent Stories was appropriate for a high end, luxury brand.

33.     On or about December 19, 2013 Murawczyk filed with the USPTO to register the trademark "Scent Stories" and on October 14, 2014, the USPTO issued Federal Registration No. 4,620,007 for the trademark, annexed hereto as Exhibit D.

34.     The Scent Stories collection received significant media attention when it was launched, and because she handled marketing and media, Yang was becoming more publicly associated with the company.  To help her present the right image, MiN NY purchased high end accessories and clothing for her.  Yang was also given a corporate credit card to enable her to make purchases for MiN NY's marketing and social media needs.

35.     Yang was paid by MiN NY to accompany Murawczyk on a business trip to Europe in the summer of 2014, and on subsequent trips, to promote the Scent Stories collection. She was a field promoter while Murawczyk served as Founder and CEO.

36.     Over time, however, Yang felt the need to enhance her role in the business, complaining that she was just Murawczyk's "glorified secretary and art person."  Yang began to act as if she was the driving force behind MiN NY's success.  Because Yang handled public relations and online marketing, she had the ability to increasingly insert herself into MiN NY's publicity to enhance her image at the expense of the company.

37.     By 2015, Yang had become increasingly difficult to work with, at times storming into Murawczyk's office and instigating loud fights where she would throw things and break down crying.

38.     The problems with both Yang's attitude and her work, particularly her lack of cooperation, refusal to take direction, and inability to complete tasks as directed, continued.   She appeared more interested in promoting herself than in promoting MiN NY and its brands; and in trying to make herself, and her image, part of the product.  Yang spent time focusing on her

personal Tumblr blog posts and "feel good" marketing posts, rather than developing the strategic marketing for the brand.

39.     She began talking about studying quantum physics and her thinking became increasingly abstract.  She told the employees who worked in the boutique that their job title was "Wonder Pilots" and the employees who worked in the back office that they were "Special Agents."

40.     During a European trip in the fall of 2015, paid for by MiN NY to promote Scent Stories, Murawczyk and Yang met with representatives of Nesta, a charitable foundation in the United Kingdom that sponsors FutureFest, a weekend of talks, experiences and debates about innovation and the future.  Murawczyk and Yang discussed MiN NY's joining in the event by creating a space that would allow participants to experience MiN NY's second fragrance collection, Scent Stories Volume II.

41.     They also discussed incorporating the "Inventory of Experiences" project, which would include audio and visual components related to each scent in the new collection. Nesta suggested that MiN NY create a bespoke scent that would be used to scent the venue and sold during the event.

42.     One of the fragrances in the Scent Stories Volume II collection is called "Ad Lumen."  Playing off that name Yang and Murawczyk discussed creating a variation on that scent and calling it "Flash of Light."

43.     In the latter half of 2015, MiN NY was getting ready to bring the second Scent Stories collection to market, and once again Yang was given the responsibility of developing the marketing materials and public relations plan.  To celebrate the launch of the new collection, Yang took inspiration from a museum exhibit she had seen during the European trip and came up

with the idea of having an interactive art installation in the boutique to which members of the media would be invited.  Each fragrance would be represented by a different interactive experience.

44.     However, when Yang sent out the invitation, she put the wrong date down, and invited the media to come a week later than she intended.  Yang's error was fortunate because it gave MiN NY time to cancel the event.

45.     As Yang described her concept and the work she was creating, Murawczyk became concerned that the concept did not make sense and Yang's ideas were not going to lead to a successful event or marketing strategy.  Murawczyk insisted that Yang meet with an outside creative director in order to save the project by bringing in senior level strategic marketing.  Yang met with the creative director over lunch.  Upon information and belief, Yang was not open to any strategic or creative feedback and was combative during the meeting.  She came back and told Murawczyk there was nothing to gain from the meeting and that she knew what she was doing.

46.     Several days before the media was expected, Yang showed the installation to the boutiques' employees.  Upon information and belief, the employees were shocked by what Yang had created.  At first they said nothing critical of the installation because Yang became so volatile when criticized.

47.     Fearing that the MiN NY brand would be permanently damaged if Yang's installation was made public, an employee called Murawczyk and told him he had to come see the installation.  What he found was bizarre, disturbing, and not at the level of sophistication appropriate for the brand.

48.     The installation art ranged from LED string lights hanging from a small, boxed-in area for the fragrance AD LUMEN, to a disturbing display of sinewy, furry material stretched over a cage for the fragrance PLUSH.

49.     The fragrance FOREVER NOW was represented by a small, bubbling fish tank pump over moss, with the mist soaking the moss; the wet moss created a strong odor that was out of place in an installation highlighting high end fragrances.

50.      CHEF'S TABLE was represented by a display of Yang's grandmother's tea cups, and a small record player sitting on the counter represented CODA.  It was literal, childish and not something to which a brand at the level of the MiN NY would invite media such as Vogue, Vanity Fair, GQ, or the New York Times.

51.      At Yang's direction, MiN NY incurred over $15,000 of expenses associated with the construction of a small wooden room strung with LED lights and covered with mirrors and other associated props.

52.     Murawczyk realized that there was no way to fix what Yang had created, and told her that he was cancelling the event.  Yang refused to recognize that what she had produced for Scent Stories Volume II was not acceptable.  After several days had passed, Yang still could not acknowledge that the art installation was not fit for public consumption and that she needed to change her approach to marketing the new collection.  At that point, Murawczyk decided that he had no choice but to terminate her.

53.     Murawczyk wanted to part on good terms. He wrote her: "Moving on to a brighter, happier and healthier 2016 – I know we wish that for each other both personally and professionally" and offered her a severance payment, which she promptly turned down.

Murawczyk was left to try and salvage the launch of Scent Stories Volume II as well as manage the boutique during the busiest time of the year, the holiday shopping season.

54.     Upon information and belief, Yang left New York and went to California for several weeks but refused to accept that she had been terminated.  At one point in January 2016, Yang came to MiN NY's Bond Street office and made a scene to the point that Murawczyk had to ask her to leave.  After that, Murawczyk received a call from Yang asking, "Am I coming back or not?" He told her that she was not.

55.     Shortly thereafter, Yang began to use her access to MiN NY's confidential and proprietary information, social media accounts, and online accounts to damage MiN NY and benefit her own enterprise, TheArtOfLiving.Earth, which was described on its website as an online store "dedicated to supporting gifted individuals, artisans and small businesses from around the world, especially in developing countries."  Upon information and belief, Yang secured the domain name TheArtOfLiving.Earth on or about December 30, 2015.

56.     MiN NY owns the Twitter account @ScentStories and controlled the account until late February 2016 when Yang seized control of the account.  Yang was able to accomplish this because, without MiN NY's knowledge or consent, when the Twitter account was created she used her personal email account instead of her MiN NY account.  This account was linked with its Instagram account and other social media accounts owned by MiN NY, so that postings on other social media accounts would automatically get sent out over Twitter as well.

57.     Yang took over this Twitter account, as is evidenced by Exhibit E hereto.  She added her website, mindyyang.info, and the text "Limited Editions of Olfactory Art potions that transcend time and space. By Mindy Yang for MiN New York" to the Twitter page, falsely promoting herself as the creator of MiN NY's products and using the MiN NY name to falsely

promote her business and falsely imply that MiN NY is associated with or endorses Yang and her business.

58.     Yang also used the @ScentStories Twitter account to divert and misdirect Plaintiff's current and prospective customers to her websites and her new business.  The first entry in Exhibit E, dated March 3, 2016, shows Yang responding to a MiN NY customer's tweet telling the customer to write to hello@TheArtOfLiving.Earth for invitations to special events. Given MiN NY's longstanding use of the tagline "The Art of Living", a customer would expect that this email address is part of or affiliated with MiN NY.  Instead, upon information and belief, it was the email address of Yang's new online business, theartofliving.earth.

59.     Upon information and belief, in the next entry in Exhibit E, Yang responded to a tweet from Spitzenhaus, one of MiN NY's European retailers, and Tweeted a link to her personal Twitter account, @godolcevita.com.

60.     MiN NY was unable to regain control of the @ScentStories Twitter account.  This was because, upon information and belief, Yang changed the email address on file with Twitter so that when Twitter sent confirmation codes that had to be entered for MiN NY to regain control of the account, all of the codes were sent to her personal email, and not to MiN NY.

61.     Upon information and belief, Yang seized control of other MiN NY social media assets. The website newyorkheart.org, and its corresponding Facebook page, are social media vehicles that Murawczyk created to communicate information about poaching of ivory.  While anti-poaching advocacy is a personal project for Murawczyk, he has affiliated his advocacy efforts with MiN NY in order to promote MiN NY as a socially responsible and concerned business.  MiN New York has hosted events by one of the leading elephant experts, Andrea

Turkalo, and others involved in anti-poaching efforts.  New York Heart's Facebook page was used for the same social messaging.

62.     Yang had administrative access to both the website and the Facebook page because she handled MiN NY's social media accounts.  She locked the company out and is continuing to post on New York Heart's Facebook and include the website of her new business TheArtOfLiving.Earth in posts to drive people to her business.  Exhibit F.

63.     Yang also used her personal Twitter account to make claims that MiN NY's products are hers, and sow additional confusion by tweeting the @ScentStories Twitter account and New York Heart Facebook page, and promoting the same difficult to find and relatively unknown products which MiN NY sells, as well as MiN NY products:



64.     The Road to Hana candle is a MiN NY product; it is not Yang's.







65.     The incense Yang is promoting in the last Tweet is from Shun You.  Shun You is not a widely known brand, and MiN NY is one of the few boutiques that stocked it.  The promotion of a product available through few sources other than MiN NY, coupled with the use of "theartofliving" creates an association in the consumer's mind that Yang's Tweet is affiliated with MiN NY.

66.     Yang has also made Tweets from her personal account in which she claims that MiN NY products are her products, Exhibit G, referring to "my Moondust," which is a fragrance in the Scent Stories collection, and referring to a bottle of MiN NY's perfume pictured in another Tweet as "my perfume."

67.     Yang also seized control of the MiN NY newyorkheart.org domain name and connected it to the website for her own business, TheArtofLiving.Earth.  As a result, if someone tried to navigate to the newyorkheart.org website, they were instantly redirected to Yang's theartofliving.earth website.

68.     Additionally, Yang also seized control of MiN NY's domain name, inventoryofexperiences.com, and connected it to the TheArtofLiving.Earth website.  The domain was purchased and developed by MiN NY to support a marketing campaign for the second collection of Scent Stories fragrances.  In its original form, the website contained links to MiN NY's websites, and webpages for Scent Stories Volume I and Scent Stories Volume II.  Exhibit H.

69.     Upon information and belief, after Yang hijacked Min NY's domain for her own use, she removed the links to MiN NY's websites and the webpages for Scent Stories Volume I and Scent Stories Volume II, and replaced them with links to her page as "Curator Mindy Yang" and website TheArtOfLiving.Earth.  Exhibit I.  Yang's seizure of this domain impaired MiN NY's ability to launch its new marketing campaign.

70.     Long before Yang performed any work for MiN NY, MiN NY owned and operated the website mensgroomingessentials.com.  For a period of time in early 2016, Yang also redirected traffic away from mensgroomingessentials.com website so that when someone entered this address in their browser, or clicked on a preexisting link, they would be instantly

redirected to her theartofliving.earth website.  MiN NY was able to regain control of the mensgroomingessentials.com domain and website. However, upon information and belief, when Yang discovered that she no longer had control of the domain and website, she created the domain name mensgroomingessentials.earth which redirects users to the theartofliving.earth website.

71.     MiN NY tried to regain control of its domains, all of which were registered through MiN NY's account with GoDaddy, the world's largest publicly traded and accredited Internet domain registrar and web hosting company, and solely at its expense.  Murawczyk contacted GoDaddy and verified the complete credit card number and company billing information in order to become a verified user on the accounts.

72.     Because Yang handled MiN NY's social media accounts, she had been permitted by MiN NY to purchase some of these domains using her MiN NY corporate credit card and she did so at its direction.  However, after her termination, Yang put a secondary security passcode on the accounts.  Because Murawczyk did not know the passcode and was unable to provide it to GoDaddy.com, it would not restore MiN NY's access to the accounts.

73.     On March 15, 2016, MiN NY filed an action , *Salonclick, LLC v. Superego Management et al.*, Index No. 152192/2016, against Defendants in New York County Supreme Court, for replevin, conversion, trademark infringement, unfair competition, deceptive business practices, trespass, [1] and breach of fiduciary duty (the "State Court Action"), seeking the transfer of various domain names and social media handles from Ms. Yang back to MiN NY, and applied by order to show cause for a temporary restraining order for interim relief.

---

[1] On June 8, 2016, MiN NY filed an Amended Complaint which withdrew the claim for unfair business practices. On January 18, 2017, the Court granted Defendants' motion to dismiss MiN NY's trespass cause of action, but denied the remainder of Defendants' motion.

74.     Despite having been advised by its attorneys that MiN NY would be appearing in state court to seek the temporary restraining order, Yang did not appear.  On March 15, 2016, the state court granted the temporary restraining order *ex parte*, and ordered Ms. Yang to transfer certain domain names and social media assets to MiN NY.

75.     On March 23, 2016, Yang filed an application for an Order to Show Cause seeking a temporary restraining order vacating the temporary restraining order that issued on March 15, 2016.  The parties appeared in state court on March 24, 2016.  During that appearance, the state court denied Yang's application to vacate the March 15, 2016 TRO, and ordered Yang to restore control of the domain names and social media assets to MiN NY there in the courtroom, even making the state court's computers available to facilitate the transfers.

76.     At that time, Yang restored MiN NY's control over all of the disputed domain names and social media assets except for the New York Heart Facebook page.  Yang has continued to post on the New York Heart Facebook page.

77.     In September 2016, Yang presented a fragrance named "Flash of Light" at FutureFest, the very same name that was to have been used for a MiN NY fragrance.

78.     MiN NY utilized a cloud-based marketing service called Campaign Monitor to manage its lists of customer contact information and send email blasts.  MiN NY has been compiling these customer lists since 1999.

79.     These lists contain the email addresses of all of the salons that have ordered products directly from MiN.  They contain the email addresses of every consumer that purchased MiN NY's hard to find and unique products through MiN NY's website since 1999.  They contain the email address of every customer who provided this information when making purchases at the SOHO boutique since the store opened.  They contain all emails from customers

and individuals interested in MiN NY products who have signed up for MiN NY's mailing list since its inception.  They contain all press contacts in the United States and abroad that have contacted the company or where communications were exchanged.

80.    As of December of 2015, there were over 12,000 emails contained in the customer lists.  TMiN NY keeps these lists confidential.  They proprietary information as MiN NY's customers and their contact information are not known to the public, and the lists have been created through a significant investment of time and effort over a period of approximately 17 years.

81.    Yang had access to the Campaign Monitor account because the email blasts were part of her marketing work for MiN NY.  After her termination, without authorization or permission, Yang accessed, copied, and appropriated for her own use the customer contact information from MiN NY's Campaign Monitor account.  She is now using this confidential and proprietary information, lists compiled by MiN NY over nearly two decades of thousands of people who have purchased or who are interested in purchasing high end, niche fragrance and grooming products, to send blast emails for her new business to MiN NY's customers and press contacts.

**FIRST CLAIM FOR RELIEF**
**(REPLEVIN)**

82.    MiN NY repeats and realleges each of the allegations set forth in paragraphs 1 through 81 hereof with the same force and effect as if fully set forth herein.

83.    Yang, with knowledge that Defendants have no rights to MiN NY's assets, has wrongfully, without authority or permission, taken MiN NY's assets, to wit, the customer lists; the @ScentStories Twitter account, the inventoryofexperiences.com domain name, the newyorkheart.org domain name, and the New York Heart Facebook page.

84.     Yang has returned all assets except for the New York Heart Facebook page.

85.     Accordingly, as the true owner, MiN NY is entitled to a judgment and order requiring Defendants to return the customer lists and the New York Heart Facebook page.

## SECOND CLAIM FOR RELIEF
### (CONVERSION)

86.     MiN NY repeats and realleges each of the allegations set forth in paragraphs 1 through 85 hereof with the same force and effect as if fully set forth herein.

87.     Yang has wrongfully, without authority or permission, and willfully taken MiN NY's assets, to wit, the @ScentStories Twitter account, the inventoryofexperiences.com domain name, the newyorkheart.org domain name, the New York Heart Facebook page, and converted them for her own use.

88.     Accordingly, Defendants are indebted to MiN NY in an amount to be determined at trial, including an amount of punitive damages sufficient to deter such conduct in the future.

## THIRD CLAIM FOR RELIEF
### (TRADEMARK INFRINGEMENT)

89.     MiN NY repeats and realleges each of the allegations set forth in paragraphs 1 through 88 hereof with the same force and effect as if fully set forth herein.

90.     Since 2014, MiN NY continuously has used its registered trademark "Scent Stories" in interstate commerce, to identify the MiN NY line of fragrance products and to distinguish them from others by prominently displaying the "Scent Stories" trademark on its packaging, advertising and promotional literature, display materials and other such items, and websites and social media.  Through such use, the "Scent Stories" trademark has acquired a strong consumer awareness and secondary meaning.

91.     Upon information and belief, Defendants intentionally have infringed the "Scent Stories" trademark by seizing control of MiN NY's Twitter account, @ScentStories, and using it for their own purposes in connection with the sale, offering for sale, distribution, and advertising of goods and with knowledge that such use is likely to cause confusion, mistake and to deceive. Defendants continue to use the Scent Stories trademark in promoting both Yang and the artofliving.earth.

92.     The use of the "Scent Stories" trademark by Defendants is without permission or authority of MiN NY.  The infringing use of the "Scent Stories" trademark is likely to be confusing to consumers, leading them to believe erroneously that they are dealing with MiN NY, or a company affiliated with MiN NY, when they are instead dealing with Defendants.

93.     Defendants' use of the "Scent Stories" trademark is likely to deceive and cause confusion and mistake as to the source of defendants' goods in that purchasers and potential purchasers thereof are likely to associate those products as originating with, having been designed by, manufactured by, sponsored by, licensed by, authorized by, or otherwise affiliated with MiN NY, all to the detriment of MiN NY.

94.     Defendants' conduct as alleged herein constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

95.     As a direct and proximate result of Defendants' willful and wanton actions and conduct MiN NY has been injured and will continue to suffer irreparable injury to its business and reputation unless Defendants are restrained by this Court from infringing the "Scent Stories" trademark.

96.     MiN NY has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**(INFRINGEMENT OF COMMON LAW**
**TRADEMARK RIGHTS)**

97.     MiN NY repeats and realleges each of the allegations set forth in paragraphs 1

through 96 hereof with the same force and effect as if fully set forth herein.

98.     MiN NY has common law trademark rights in the marks "Scent Stories", "The

Art of Living", "Art of Living", "Men's Grooming Essentials", and "New York Heart".   As a

result, Defendants' use of these marks constitutes an infringement of MiN NY's exclusive

common law rights in and to the marks in that such use is likely to cause confusion, deception

and mistake in the minds of the public with respect to the origin, source and affiliation of the

Defendants' business and products.

99.     Defendants' use of the marks and the other conduct set out above has been and

continues to be an infringement of MiN NY's rights in and to the marks, and the common law

rights accorded MiN NY by virtue of its prior use of the marks.

100.    Defendants' conduct as alleged herein constitutes common law trademark

infringement.

101.    As a direct and proximate result of Defendants' willful and wanton actions and

conduct, MiN NY has been injured and will continue to suffer irreparable injury to its business

and reputation unless Defendants are restrained by this Court from using the marks, and

restrained from otherwise falsely designating, representing and describing their products as those

of, sponsored by, licensed by, authorized by, or otherwise emanating from MiN NY.

102.    MiN NY has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**(COMMON LAW UNFAIR COMPETITION)**

103.    MiN NY repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 102, above.

104.    The aforesaid use by Defendants of the marks "Scent Stories", "The Art of Living", "Art of Living", "Men's Grooming Essentials", and "New York Heart", their false statements of relationship to or affiliation with MiN NY, and their other conduct set out above falsely suggests an association with, sponsorship by, or authorization by MiN NY.

105.    Upon information and belief, the aforesaid use by Defendants of the marks "Scent Stories", "The Art of Living", "Art of Living", "Men's Grooming Essentials", and "New York Heart", their false statements of relationship to or affiliation with MiN NY, and their other conduct as set out above were calculated to deceive or confuse the public and to profit unjustly from the goodwill of MiN NY.  Upon information and belief, Defendants' have used MiN NY's proprietary customer lists to solicit MiN NY's customers and drive business to Defendants' business, ArtofLiving.earth.  Defendants' actions constitute unfair competition with MiN NY under the laws of the State of New York.

106.    As a direct and proximate result of Defendants' willful and wanton actions and conduct, MiN NY has been injured and will continue to suffer irreparable injury to its business and reputation unless Defendants are restrained by this Court from using the marks, from making false statements concerning their relationship to or affiliation with MiN NY, from the other conduct set forth above and from infringing the common law rights of plaintiff MiN NY.

107.    MiN NY has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
## (VIOLATION OF SECTION 360-L OF
## THE NEW YORK GENERAL BUSINESS LAW)

108.    MiN NY repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 107, above.

109.    The MiN NY marks are distinctive and have acquired secondary meaning in the marketplace.

110.    Defendants' use of the marks, their false statements concerning their relationship to or affiliation MiN NY, and other conduct as set forth above, have blurred the selling power of the marks, tarnished and reduced the marks' reputation and standing in the eyes of consumers as identifiers of MiN NY products, and diminished the marks' ability to serve as source and product identifiers.

111.    Defendants' conduct violates Section 360-l of the New York General Business Law.

112.    As a direct and proximate result of Defendants' willful and wanton acts and conduct, MiN NY has been injured and will continue to suffer irreparable injury to its business and reputation unless Defendants are restrained by this Court from further use of the marks, and from making false statements as to their relationship to or affiliation with MiN NY, and the other wrongful conduct in connection with the marks set out above.

113.    MiN NY has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF
## (BREACH OF FIDUCIARY DUTY)

114.    MiN NY repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 113, above.

115.    At all relevant times prior to Defendants' termination in December of 2015, Yang acted as MiN NY's agent, and as such owed MiN NY, the principal, fiduciary duties.

116.    By their conduct, including (a) seizing MiN NY's social media and internet domains and websites and using them to promote Defendants' new business theartofliving.earth, (b) using MiN NY's mark "The Art of Living" as a business name and domain name, (c) falsely holding Yang out as the creator and source of MiN NY's products and as associated or affiliated with MiN NY, (d) by trying to sow confusion and mislead MiN NY's customers to believe that theartofliving.earth is associated with MiN NY, (e) by impairing MiN NY's launch of its marketing campaign, Inventory of Experiences, for its new Scent Stories fragrances, through Yang's conduct of seizing the inventoryofexperience.com domain and using it to redirect consumers to her websites; (f) taking MiN NY's proprietary customer list and using it to solicit MiN NY's customers; (g) taking MiN NY's product in development, "Flash of Light" and marketing it as their own, Defendants have breached their fiduciary duties to MiN NY.

117.    Accordingly, Yang and Superego are indebted to MiN NY in an amount to be determined at trial.

**WHEREFORE**, Plaintiff seeks judgment as follows:

1.    Directing that Defendants:

    (a)    restore control of the New York Heart Facebook page to MiN NY;

    (b)    remove or rename the theartofliving.earth Instagram page and close the corresponding Instagram account; and

    (c)    assign and transfer the Internet domain names theartofliving.earth, artofliving.earth, and mensgroomingessentials.earth to MiN NY.

    (d)    return all computer data, files, and proprietary information to MiN NY.

2.    Enjoining Defendant Mindy Yang from:

(a)     holding herself out as affiliated with MiN NY in any way;

(b)     holding herself out as the source, designer, creator, or inventor of any of MiN NY's products;

(c)     holding herself out in any manner likely to cause confusion as to the source of goods or services sold, offered for sale or provided by MiN NY;

(d)     using any user name, hashtag or other identifier which is the same as or confusingly similar to MiN NY, Art of Living, Scent Stories, Inventory of Experiences, Men's Grooming Essentials or New York Heart on Twitter or any other social networking service or site or sending or posting tweets, reblogging, tagging or mentioning MiN NY or any trademark, brand, product or product line, tagline, graphic or image associated with MiN NY in any social media profile;

(e)     creating or continuing to maintain any group list on any social media service or site that includes MiN NY or any user name used by or associated with MiN NY;

(f)     uploading images or other content referring to or associated with MiN NY or its products to any social networking service, website, or other internet based service;

(g)     registering, or using, any domain name which is the same as or confusingly similar to MiN NY, Art of Living, The Art of Living, Scent Stories, Inventory of Experiences, New York Heart or Men's Grooming Essentials;

(h)     redirecting visitors to any of MiN NY's websites, URLs or domains to another website; and

(i)     impersonating MiN NY in any way likely to cause others to believe that she or her company or any products or services they offer are associated with MiN NY.

3.     Ordering Defendants to pay damages in an amount to be determined at trial.

4.     Ordering Defendants to pay an appropriate amount as punitive damages to deter their willful and wanton conduct and to avoid future confusion or deception of the public and unfair competition with MiN NY;

5.     Awarding MiN NY its costs and attorneys' fees incurred in this action; and

6.     Granting MiN NY such other and further relief as this Court may deem just and proper.

Dated:  New York, New York                    PHILLIPS NIZER LLP
        April 7, 2017

                                              By:  s/ Elizabeth A. Adinolfi
                                                   Thomas G. Jackson
                                                   Elizabeth A, Adinolfi
                                              666 Fifth Avenue
                                              New York, New York 10103
                                              (212) 977-9700

                                              *Attorneys for Plaintiff Salonclick  LLC
                                              and Chad Murawczyk*