USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/8/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALONCLICK LLC d/b/a MIN NEW YORK,

Plaintiff,

-against-

SUPEREGO MANAGEMENT LLC and MINDY YANG,

Defendants.

16 Civ. 2555 (KMW)

**OPINION AND ORDER**

KIMBA M. WOOD, District Judge:

Plaintiff, Salonclick LLC d/b/a MiN New York ("MiN NY"), a company founded by Chad Murawczyk, brings this action against Murawczyk's former romantic partner and business associate, Mindy Yang, and her company SuperEgo Management LLC ("SuperEgo") for, *inter alia*, replevin, conversion, unfair competition, and breach of fiduciary duty. On January 18, 2017, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's first amended complaint. ECF No. 23. Following an initial conference before the undersigned, the Court granted leave for Plaintiff to amend its complaint. ECF No. 45. Plaintiff filed the operative complaint, the Second Amended Complaint ("SAC"), on April 7, 2017. ECF No. 46. Defendants now move to partially dismiss four narrow parts of Plaintiff's SAC. For the reasons set forth below, Defendants' motion to dismiss is DENIED.

## I. BACKGROUND[1]

Given the narrow scope of the pending motion, the Court describes only the limited relevant facts. Salonclick LLC was founded by Chad Murawczyk in 1999. SAC ¶ 11. Salonclick LLC has done business under the name "MiN" and "MiN New York," through

[1] The following facts are taken from the SAC and are assumed to be true for purposes of Defendants' motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

which it has manufactured and sold hair color, hair care, and skin care products. *Id.* MiN NY has utilized a variety of website domain names including www.mensgroomingessentials.com, *id.* ¶ 13, and www.inventoryofexperiences.com, *id.* ¶ 68. Since at least 2007, MiN NY has utilized the phrase "The Art of Living" as a tagline in packaging, advertising, and online. *Id.* ¶ 30. In 2014, MiN NY launched a brand of perfumes called "Scent Stories," for which MiN NY has been awarded a trademark. *Id.* ¶ 33 & Ex. D. MiN NY's social media assets include www.newyorkheart.org and its corresponding Facebook page, which are run by Murawczyk as a vehicle for advocating against ivory poaching, which are used to promote MiN NY as a "socially responsible and concerned business." *Id.* ¶ 61.

In 2006, Murawczyk and Yang met and began a romantic relationship. *Id.* ¶ 14. In 2007, Yang formed SuperEgo, *id.* ¶ 15, and MiN NY hired SuperEgo to assist with "graphic design, marketing, assistance with public events, and administrative support, *id.* ¶¶ 22, 25. The romantic relationship ended in 2008. *Id.* ¶ 14. The professional relationship deteriorated, *see id.* ¶¶ 37-38, and, in the latter half of 2015, Murawczyk terminated Yang, *id.* ¶¶ 43-52.

As relevant to this motion, the SAC alleges three sets of actionable activities taken by Yang following her termination. First, Plaintiff alleges that Yang copied MiN NY's customer lists, which contain the e-mail addresses of over 12,000 of MiN NY's customers. *Id.* ¶¶ 80-81. MiN NY kept these lists confidential and alleges that they are proprietary information that were compiled by MiN NY over "nearly two decades" of marketing. *Id.* Yang had access to this information as part of her marketing work for MiN NY. *Id.* ¶ 80. After her termination, Yang copied the customer lists and used the information to send e-mails on behalf of Yang's new business to MiN NY's customers and press contacts. *Id.* ¶ 81.

Second, after Murawczyk confirmed Yang's termination in early 2016, Yang used her access to MiN NY's website and social media accounts for Yang's own benefit. *Id.* ¶ 55. Yang created a new online business www.theartofliving.earth, *id.* ¶¶ 1, 55, and redirected MiN NY's websites—including www.mensgroomingessentials.com, www.inventoryofexperiences .com, and www.newyorkheart.org —to Yang's website, *id.* ¶¶ 67-70. Yang has also used MiN NY's social media pages—such as the Twitter page @ScentStories and the New York Heart Facebook page—to promote Yang's new online business. *Id.* ¶¶ 58, 61, 62. For instance, a post on the @ScentStories Twitter account told a customer to write to the e-mail address hello@TheArtOfLiving.Earth, an e-mail address for Yang's new business, for invitations to special events. *Id.* ¶ 58. Yang also created her own domain name, www.mensgroomingessentials.earth, which redirected to www.theartofliving.earth. *Id.* ¶ 70. These activities impaired MiN NY's ability to launch a new marketing campaign. *Id.* ¶ 69. Following a state court proceeding, Yang restored control of the domain names and social media accounts to MiN NY, except for the New York Heart Facebook. *Id.* ¶¶ 75-76, 84.

Finally, Plaintiff alleges that Yang and Murawczyk discussed, at some unspecified time, creating a scent called "Flash of Light," which would be a variation of a MiN NY scent, "Ad Lumen." *Id.* ¶ 42. In September 2016, after Yang's separation from MiN NY, "Yang presented a fragrance named 'Flash of Light'" at a trade conference. *Id.* ¶ 77; *see id.* ¶ 40. Plaintiff alleges that Defendants took "MiN NY's product in development, 'Flash of Light' and market[ed] it as their own." *Id.* ¶ 116.

## II. LEGAL STANDARDS

A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. . . . A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* (quoting *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003)).

B. Rule 12(b)(6)

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

## III. DISCUSSION

A. Count 1: Replevin as to Plaintiff's Customer Lists

Defendants argue that Plaintiff fails to state a cause of action for replevin as to Plaintiff's customer lists because "Yang 'copied' the lists, during such times as she had authorized access to same, not that Plaintiff[] no longer [has] possession or control over the lists." Def. Mem. 5, ECF No. 49. Puzzlingly, the only caselaw cited in Defendants' opening brief is *Trustforte Corp. v. Eisen*, 10 Misc. 3d 1064(A), 814 N.Y.S.2d 565 (Table), 2005 N.Y. Slip Op. 52116(U) (Sup. Ct. 2005), which addressed conversion under New York law, not replevin. This difference is material: "Unlike conversion, replevin is still available even if the property taken is a copy—so long as the plaintiff's right is superior." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14 Civ. 8467, 2016 WL 5416498, at *7 (S.D.N.Y. Sept. 28, 2016).

In their reply, Defendants raise a second argument: that replevin requires a demand and refusal. Def. Reply 2-3, ECF No. 55. First, this argument is improperly raised: "Generally, 'new arguments may not be made in a reply brief.'" *DSND Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) (quoting *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999)). Nevertheless, the argument is meritless. "The purpose of the demand requirement 'is simply that one in lawful possession shall not have such possession changed into an unlawful one until he be informed of the defect of his title and have an opportunity to deliver the property to the true owner.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 360 Fed. Appx. 179, 180 (2d Cir. 2010) (quoting *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996)). Although Plaintiff pleads that "Yang had access to the" customer list, Plaintiff also pleads that Yang "accessed, copied

and appropriated" the customer lists *after her termination* "without authorization or permission." SAC ¶ 81. Accordingly, "[t]o the extent that a jury could find that Defendants misappropriated the customer list, however, the demand requirement would not even apply." *Chefs Diet Acquisition Corp.*, 2016 WL 5416498, at *7. As pleaded in the SAC, Defendants knowingly and wrongfully misappropriated the customer list, and the demand requirement does not apply.

Defendants' motion as to Count 1 is denied.

B. Count 2: Conversion as to Returned Assets

Defendants argue that Plaintiff's conversion cause of action related to "now-returned domain names and social media accounts" is moot and fails to state a claim. Def. Mem. 5-6.

First, Defendants argue that "Plaintiffs' conversion claim is stripped of any redressable remedy for monetary damages, as the domain names are in Plaintiffs' possession, undamaged." *Id.* at 5 (citing Restatement (Second) of Torts § 222A). Defendants also argue that "Plaintiffs have not alleged any loss associated with any deprivation of use of the disputed domain names or social media accounts by virtue of any act of Defendants." *Id.* at 6. This argument is incorrect both as to the pleaded facts and as a matter of New York law. The SAC alleges that Defendants' seizure of domain names "impaired MiN NY's ability to launch its new marketing campaign," SAC ¶ 69, from which damages could presumably accrue. Further, punitive damages are available where "the circumstances establish that the conversion was accomplished by malice or reckless or willful disregard of the plaintiff's right." *Bazignan v. Team Castle Hill Corp.*, No. 13 Civ. 8382, 2015 WL 1000034, at *4 (S.D.N.Y. Mar. 5, 2015) (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 341-42 (S.D.N.Y.

2005)). The Court cannot foreclose the possibility of punitive damages at this stage. Plaintiff has sufficiently alleged damages for purposes of a motion to dismiss.

Second, Defendants argue that "where a defendant's possession of property is initially lawful, conversion occurs only when there is a refusal to return the property after a demand." Def. Mem. 6. However, "a 'demand and refusal' will be considered futile, and thus not be required, in certain limited circumstances, including where the custodian 'knows it has no right to the goods.'" *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 370-71 (S.D.N.Y. 2014) (quoting *State v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 711 (N.Y. 2002)). Given the allegations that Defendants used Plaintiff's online accounts after her termination without authorization to promote her own business, *see* SAC ¶¶ 55-72, the Court finds that a demand and refusal are not necessary.

Accordingly, Defendants' motion as to Count 2 is denied.

C. Counts 5 and 7: Unfair Competition and Breach of Fiduciary Duty as to Plaintiff's Customer Lists

Defendants argue that Plaintiff fails to state a claim for unfair competition or breach of fiduciary duty as to Yang's alleged taking of Plaintiff's customer lists. Def. Mem. 6-7. Specifically, Defendants argue that "solicitation of an entity's customers by a former . . . independent contractor is not actionable unless the customer list could be considered a trade secret, or there was wrongful conduct by the . . . independent contractor, such as physically taking or copying files or using confidential information." *Id.* at 6 (quoting *Starlight Limousine Serv., Inc. v. Cucinella*, 275 A.D.2d 704, 705 (N.Y. App. Div. 2000)). Defendants argue that Plaintiff's allegations are conclusory, that the customer lists were not confidential, and that Plaintiff's fail to assert that Defendants have used the customer lists. *Id.* at 6-7.

These arguments fail. Unfair competition is a "broad and flexible doctrine." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 208-09 (S.D.N.Y. 2008) (quoting *Roy Export Co. Establishment v. Columbia Broad. Sys. Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)). "Although claims of unfair competition often allege misappropriation of trade secrets or ideas, a claim may be based on misappropriation of information not rising to that level, such as client lists, internal company documents, and business strategies." *Id.* at 209 (citing *LinkCo, Inc. v. Fujitsu, Ltd.*, 230 F.Supp.2d 492, 501-02 (S.D.N.Y. 2002)). The Second Circuit has described unfair competition as "misappropriat[ing] for the commercial advantage of one person . . . a benefit or 'property' right belonging to another." *Id.* (alterations in original) (quoting *Roy Export*, 672 F.2d at 1105). It is well-established law that "where the information taken would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents for use in a competitor's business constitutes unfair competition." *Fairfield Fin. Mortg. Grp., Inc. v. Luca*, 584 F. Supp. 2d 479, 487 (E.D.N.Y. 2008) (quoting *Innovative Networks v. Satellite Airlines Ticketing Ctrs.,* 871 F. Supp. 709, 730 (S.D.N.Y. 1995)).

Similarly, for breach of fiduciary duty,[2] "an agent has a duty 'not to use confidential knowledge acquired in his employment in competition with his principal.' This duty 'exists as well after the employment is terminated as during its continuance.'" *ABKCO Music Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 994 (2d Cir. 1983) (internal citation omitted) (quoting *Byrne v. Barrett*, 197 N.E. 217, 218 (N.Y. 1935))).

Plaintiff's allegations meet these standards. Plaintiff alleges that the customer lists include "the e[-]mail addresses of every consumer that purchased MiN NY's . . . products . . .

[2] In adjudicating Defendants' first motion to dismiss, the Court held that Plaintiff's previous complaint sufficiently alleged facts to state the existence of a fiduciary relationship. *See* ECF No. 23 at 9-10. Defendants do not appear to contest that issue here.

since 1999," SAC ¶ 79, and included over 12,000 e[-]mail addresses, *id.* ¶ 80. Plaintiff alleges that Defendants are "now using this . . . information . . . to send blast e[-]mails for her new business to MiN NY's customers." *Id.* ¶ 81. These lists have been kept confidential and non-public, and have been developed through "a significant investment of time and effort." *Id.* ¶ 80. Defendants' motion as to the customer lists is without merit.

D. Count 7: Breach of Fiduciary Duty as to "Flash of Light"

Defendants argue that Plaintiff fails to state a claim as to the use of the name "Flash of Light" for a fragrance. Defendants do not cite *any* authority in support of their argument in either their opening or reply briefs. *See* Def. Mem. 7-9; Def. Reply 10-11.

It is true that at one point, Plaintiff alleges that Yang released a fragrance with the *name* "Flash of Light," SAC ¶ 77, but Plaintiff later alleges that Defendants took a "*product in development* . . . and market[ed] it as their own," *id.* ¶ 116 (emphasis added). "[A]ccepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), the Court is able to draw the reasonable inference that the defendant is liable for the misconduct alleged, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If, as suggested in the SAC, Defendants took a product that they had previously worked on while in the employ of Plaintiff and released it under their own name to compete with Plaintiff, a cause of action for breach of fiduciary duty may arise. *See, e.g.*, *ABKCO Music Inc.*, 722 F.2d at 994. Defendants' motion as to "Flash of Light" is denied.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 49.

SO ORDERED.

Dated: May 8, 2017
New York, New York

Kimba M. Wood
KIMBA M. WOOD
United States District Judge